## COHEN v. STANDARD ACCIDENT INSURANCE COMPANY

(17 S. E. (2d), 230)

(See: 194 S. C., 533, 9 S. E. (2d), 222)

July, 1940.

*Mr. Douglas McKay* and *Mr. John B. McCutcheon, Jr.,*
both of Columbia, S. C.; Counsel for Appellant,

266

*Mr. C. T. Graydon* and *Mr. John Grimball,* both of Columbia, S. C., Counsel for Respondent,

November 4, 1941.

The unanimous Opinion of the Court was delivered by CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE:

Murphy Cohen, plaintiff above named and respondent herein, was engaged in the business of operating a liquor store at Myrtle Beach, called the Carolina Liquor Store, for a period of time commencing on or about July 13, 1936. Cohen entered into a parol agreement with one Brooks Baldwin, formerly of Tabor, N. C., for the purpose of the formation of a partnership for the conduct of the business, but he claims that Baldwin did not put up his share of the capital and did not comply with the agreement, and that hence the partnership was not consummated; while on the other hand, Baldwin claims that he was in fact a copartner in the business. It appears that Baldwin did work in the store from its opening until on or about the 1st day of September, 1936, when he left to attend the North Carolina State College as a student, returning to Myrtle Beach during the Christmas holidays.

Thereafter there seems to have been considerable controversy between Baldwin and Cohen in regard to the business, which resulted in litigation between them commencing in July, 1937. Indeed, there appears to have been a suit and a cross suit. And on July 29, 1937, an order was handed down by Honorable M. M. Mann, presiding Judge of the Court of Common Pleas for Horry County, appointing two Receivers to take over and manage the Carolina Liquor Store at Myrtle Beach, and fixing the value of the property sought to be placed in the hands of the Receivers at $6,000.00 Thereupon, Cohen, who was thus deprived of the possession of the business, applied to Standard Accident Insurance Company, the defendant above named and the appellant herein, for a bond in the sum of $12,000.00 pursuant to

the provisions of Section 584(9), Code 1932, which provides that no Receiver of the property of any person or corporation shall be appointed before final judgment if the party claiming the property or the party in possession thereof shall offer a bond in the penalty of double the value of the property with sufficient security "to fully account for and deliver over, whenever thereafter required by any final adjudication in the cause, the property sought to be placed in the hands of a receiver, and to meet and satisfy any decree or judgment or order that may be made in the cause." This kind of bond is sometimes spoken of as a forthcoming bond.

Upon payment of the premium, to wit, $150.00, the insurance company as surety and Murphy Cohen as principal duly executed the bond applied for, the same being dated August 4, 1937. The execution on the part of the company was made by its attorney-in-fact, his power of attorney being in regular form. Notwithstanding the due and complete execution of the bond, however, when Cohen presented it to the Clerk of Court at Conway for filing the clerk declined to receive it or file it for the reason that he was notified by the Standard Accident Insurance Company not to accept the bond, which was in effect a cancellation of the same. Hence Cohen contends that the bond having been cancelled, there was no other way for him to obtain possession of his property and business, and that he was thus forced to sell to Baldwin at a sacrifice; and it appears that on August 7, 1937, he entered into a "buy or sell" agreement with Baldwin, pursuant to which he sold out to him for $3,503.65.

Thereafter Cohen commenced the instant action alleging that the defendant by reason of its breach of the contract relating to the bond in question forced the plaintiff to sell his property at an amount far below the market price, whereby he sustained a loss of over $3,000.00 in the transaction, the complaint also alleging that the defendant collected from the plaintiff the premium on the bond and retained the same. Defendant answered denying liability, and the cause came on

for trial in the Richland County Court before Judge Holman and a jury for the first time on January 27, 1939, resulting in a verdict in plaintiff's favor for $2,733.00, which upon a motion for a new trial was reduced by order *nisi* to the sum of $1,900.00, the reduction being accepted by the plaintiff; whereupon the cause was appealed by the defendant to this Court, the opinion of which was delivered on May 31, 1940, reversing the judgment below and remanding the case for a new trial on the sole ground of error in the admission of certain testimony relating to the issue as to whether or not the Standard Accident Insurance Company "had cancelled, or ordered the non-acceptance of the bond in question." The appeal also involved exceptions on the part of the insurance company to the refusal of the lower Court to direct a verdict upon the ground that the evidence was insufficient to show that the plaintiff, Cohen, sustained any loss or damage; but as to that issue this Court held that Judge Holman committed no error in submitting the same to the jury. The opinion is reported in 194 S. C., 533, 9 S. E. (2d), 222, 223.

After the remittitur to the lower Court was filed the defendant tendered to the plaintiff the amount of the bond premium payment, to wit, $150.00, and for that purpose offered to allow judgment to be taken against it for this sum "with costs from the date of the remittitur and interest;" but this tender and offer was refused. The defendant was then permitted to amend its answer by adding to its general denial previously interposed an admission of the cancellation or recall of the bond, setting up the circumstances under which the same was issued and cancelled and the facts relating to the disposition of the premium. In this connection, it may be said that on the second trial of the case, counsel for the plaintiff withdrew the matter of the alleged failure to return the premium as an element of damages.

The case came on for trial before Judge Holman and a jury for a second time on July 22, 1940, and at the close of

all the testimony both parties moved for a direction of verdict, the motion of defendant being based on the ground "that the plaintiff has failed to prove any damages that can be attributable to the Standard Accident Insurance Company on account of the cancellation of the bond." The Court refused to direct a verdict and submitted the cause to the jury. In this connection, it should be stated that on the second trial of the case there was no question whatever as to the competency of the testimony tending to prove that the defendant cancelled the bond by refusing to allow it to be accepted and filed by the Clerk, although it had previously been duly executed and the premium paid; and indeed there was no issue on this point. As Judge Holman says in his charge: "Defendant admits that it issued the bond and the defendant admits it cancelled the bond, but denies that Cohen suffered any loss as a result of any act or acts on the part of the defendant."

The jury returned a verdict in favor of the plaintiff for the sum of $2,500.00, and thereafter the defendant moved for a new trial on the ground that the verdict was excessive, and also on the ground that the evidence was insufficient to show that the plaintiff had sustained any damages. The Court overruled the motion except as to *excessive* damages and granted a new trial *nisi,* that is to say, unless $600.00 was remitted, but this was done in due course, thus reducing the verdict to the sum of $1,900.00. Thereupon the case was brought to this Court by the defendant upon four exceptions; but it will be observed that there is no exception whatever to the rulings of the County Judge upon the admissibility of testimony, or to his charge to the jury, or to his refusal of a new trial absolute. And the four exceptions really raise the single question as to whether or not a verdict should have been directed for the defendant on the ground that there was failure of proof of damages. Indeed, the issue is well stated in Judge Holman's charge as follows: "Now then, I think the cardinal issue in this matter is was Cohen

forced to sell that business by reason of the cancellation of the bond. If he was not, that would end the case and the defendant would be entitled to a verdict. If he was forced to sell it as a direct proximate result of the cancellation of the bond and by reason thereof he was injured and damaged and caused to lose money, then he would be entitled to be compensated for whatever would be a reasonable and proper amount taking into consideration all of the evidence in the case."

The first exception, however, appears incidentally to involve the question of the existence or non-existence of a copartnership between Cohen and Baldwin, although it is alleged to be "an issue foreign to the cause at bar." This exception is as follows: "The Trial Court erred in refusing to direct a verdict for the defendant herein and in submitting to the jury the issue of damages alleged to have been sustained by the plaintiff by reason of the sale of his interest in the liquor store in question to his erstwhile partner, Baldwin, it being respectfully submitted in this connection that such alleged damages, if any, were highly speculative, uncertain and conjectural and of necessity based entirely upon the assumption of the nonexistence of a copartnership, the existence or nonexistence of which was an issue foreign to the cause at bar and a matter which had been prematurely settled by the voluntary. action of the plaintiff in his agreement with Brooks Baldwin of 7th August, 1937."

But the record is replete with testimony offered by each of the parties on this very question, to wit, the existence or non-existence of the partnership. The testimony on the subject is indeed conflicting or at least the inferences to be drawn from the testimony are conflicting. At all events, it was clearly a question for the jury. And the issue was a most vital one because if Cohen did not own but one-half of the business his sale did not entail a loss; whereas, if he owned it all there was testimony in his behalf tending to show a considerable loss. And the jury in rendering a

verdict for the plaintiff necessarily found that a partnership did not exist and that Cohen was the sole owner of the property.

In this connection it may be stated that this finding of the jury clearly has a reasonable basis in the evidence upon the testimony of Baldwin himself. In fact, he admits that he made no substantial contribution to the capital of the proposed partnership. It appears that he paid the insignificant sum of $4.50 for a record book for the business and this was his sole cash contribution, except he testifies that during the period he worked in the store he withdrew certain funds which he afterwards returned and that he paid in a little more than he took out. He says: "$5.00, $10.00, or $15.00." In other words, he never put in more than $19.50 in cash. And in answer to the question as to why he did not put up dollar for dollar as he was supposed to do, he says: "Because the way the business was going I didn't want to put any money in it until it was settled some way." It is true that he testifies that he worked in the store without a salary for a period of time, the length of which is referred to in his cross examination as follows: "Q. Six weeks? A. Something like that. I don't remember." On the other hand, Cohen furnished substantially the entire capital, amounting to a sum of at least approximately $1,200.00, and he claims to have devoted his time and attention to the business. Clearly a mere executory agreement, parol or otherwise, to form a partnership does not of itself create such a legal relationship. 47 C. J., 657. *Lane v. Roche,* Riley Eq., 215.

The first exception also raises the point that Cohen acted *prematurely,* because almost immediately after the bond was cancelled he entered into a "buy or sell" agreement, dated August 7, 1937, under which he sold out to Baldwin; whereas, it is argued that he should have awaited the further progress of the litigation between himself and Baldwin, and should have allowed the Receivers to pro-

ceed with the operation of the business. But from the viewpoint of Cohen, he had exhausted his last opportunity to retain his property and the business incidental thereto, out of which presumably he got his livelihood; and it was at least for the jury to say whether or not his action was precipitate or premature.

The remaining exceptions are to the same general effect, to wit, that the trial Judge erred in refusing to direct a verdict, because the alleged damages were not the direct, natural or proximate result of the cancellation of the bond, but were highly speculative and conjectural; the particular points being: That there was a failure to prove any gains or profits which might have been made had plaintiff been permitted to operate the business pending the litigation; that the plaintiff voluntarily withdrew during the course of the trial the issue of defendant's failure to return the premium; and that the plaintiff voluntarily effected a sale of his interest in the property at a figure fixed by him.

Without discussing these points in detail, it seems sufficient to say that there was evidence before the jury tending to show that the previous conduct of the business by Cohen had been profitable; and that if the plaintiff saw fit to waive the matter of return of the premium as an element of damages this was not prejudicial to the defendant; and that the fact that the sale was made at a price ultimately named by the plaintiff was normally incident to the character of a buy or sell agreement, and that it was for the jury to say whether under the circumstances Cohen acted with reasonable prudence with reference to this agreement.

It was also argued that Cohen did not act with due diligence in an effort to obtain another bond although he testified that he made one inquiry. However, the defendant could scarcely be heard to say that there was any negligence on the part of Cohen in this respect, for its representative testified as its excuse (not a legal one) for the

cancellation of the bond, to wit, that such a bond is "considered most undesirable" because it is a hazardous financial guaranty, "and we do not write them without full cash collateral."

With reference to the amount of the damages, the testimony in behalf of plaintiff, based upon the estimated net valuation of the property and business in question, tends to show a loss of at least $2,000.00. Hence the verdict as reduced to the sum of $1,900.00 is reasonably sustained by the evidence, notwithstanding the conflict in the testimony. (The verdict was of course for actual damages.)

We are therefore of opinion that Judge Holman committed no error in the refusal of the motion, even if this question could be considered an open one, or one to be determined without regard to the former appeal. But after full consideration of the matter our conclusion is that the judgment of the Court on the former appeal became the law of the case in this respect, and hence the County Judge was also for this reason obliged to refuse the motion.

This principle is such a sound and reasonable one that it is universally recognized. An excellent statement of the rule is the following from 3 Am. Jur. 541-544: "The decisions agree that as a general rule, when an appellate Court passes upon a question and remands the cause for further proceedings, the question there settled becomes the 'law of the case' upon a subsequent appeal, provided the same facts and issues which were determined in the previous appeal are involved in the second appeal. But if the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings, or findings, a prior decision is not conclusive upon questions presented on the subsequent appeal; and the original proceedings are before the Court on a second appeal so far as it is necessary to determine any new points in controversy between the par-

ties which were not terminated by the original decree."

The foregoing statement is fully sustained and supported by numerous decisions of this Court, among which are the following: *Lytle v. Southern Ry.—Carolina Division,* 171 S. C., 221, 171 S. E., 42, 90 A. L. R., 915; *Cato v. Atlanta & C. A. L. Ry. Co.,* 164 S. C., 123, 162 S. E., 239; *Cantor v. Reserve Loan Life Ins. Co.,* 169 S. C., 338, 168 S. E., 848; *Jenkins v. Southern Ry. Co.,* 145 S. C., 161, 143 S. E., 13; *Steele v. Atlantic Coast Line R. R. Co.,* 109 S. C., 104, 95 S. E., 180; and *Brown v. Piedmont Mfg. Co.,* 109 S. C., 343, 96 S. E., 138.

The transcript of record on the former appeal is before us, and upon an examination of the same we find that the testimony with reference to this issue was substantially the same in the first trial as it was in the second trial; and the following quotation from the carefully prepared opinion of Mr. Justice Fishburne on the former appeal is conclusive on the point under consideration: "Appellant contends that the Court erred in refusing to direct a verdict in its favor on the ground that there was no evidence of damage sustained by the plaintiff to warrant the submission of that issue to the jury. We will not undertake a review of the evidence on this issue. We have carefully read the record, and we think that more than one reasonable inference could be drawn from the testimony on this question. In our opinion, the Court committed no error in submitting this issue to the jury."

Counsel for appellant, however, in their reply brief earnestly contend that upon the first appeal the appellant primarily concerned itself with the *amount* or *quantum* of damages, while its concern now is "with the quality" of the evidence with reference to such damages, and that the evidence is not of such *quality* as to sustain a verdict for damages in any amount. But this position scarcely appears tenable in view of the fact that one of the exceptions on the former appeal is that the trial Court erred in refusing to direct a ver-

dict for the defendant because the sole inference to be drawn from the testimony in its entirety was that the plaintiff had suffered no loss.

All the exceptions are overruled and the judgment of the County Court is affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE, and STUKES, and CIRCUIT JUDGE A. L. GASTON, ACTING ASSOCIATE JUSTICE, concur.