17306

W. R. NELSON, as Administrator of the Estate of Billie Baker Turner, Respondent, v. CHARLESTON AND WESTERN CAR- OLINA RAILWAY COMPANY, Appellant.

(98 S. E. (2d) 798)

*Messrs. A. C. Todd,* of Greenwood, and *Warren & Warren,* of Hampton, *for Appellant,*

*Messrs. W. Brantley Harvey,* of Beaufort, and *Randolph Murdaugh,* of Hampton, *for Respondent,*

*Messrs. A. C. Todd,* of Greenwood, and *Warren & Warren,* of Hampton, *for Appellant, in Reply.*

June 10, 1957

OXNER, Justice.

This is an action to recover damages for the alleged wrongful death of Mrs. Billie Baker Turner. About 12:10 A. M. on August 23, 1950, an automobile driven by her

collided with a freight train of the Charleston & Western Carolina Railway Company at a spur track crossing on U. S. Highway No. 21, approximately four miles north of the town of Beaufort. Her husband, who was riding with her, was killed instantly, She died the following day as a result of injuries sustained in the collision. The action was originally brought for the benefit of her two brothers, James Monroe Baker and William Eugene Baker, and her sister, Mrs. Gertrude B. Dressing. The case was tried at the February, 1953 term of the Court of Common Pleas of Hampton County and resulted in a verdict for plaintiff for $30,-000.00 actual damages and $12,500.00 punitive damages. From the judgment entered thereon, the Railway Company appealed. In an opinion filed on February 15, 1955, the judgment was reversed and a new trial granted on account of certain erroneous instructions relating to damages. *Nelson v. Charleston & W. C. R. Co.,* 226 S. C. 516, 86 S. E. (2d) 56.

Subsequent to the first trial of the case, the sister, Mrs. Gertrude B. Dressing, died and the complaint was amended by eliminating her as a beneficiary, leaving an action solely for the benefit of the two brothers. The case was tried a second time in March, 1956, and resulted in a verdict for the plaintiff in the sum of $35,000.00 actual damages and $17,500.00 punitive damages. A new trial was ordered unless the plaintiff remitted $6,000.00 of the verdict for actual damages. In due time the remission was made and judgment entered for $29,000.00 actual damages and $17,500.00 punitive damages. From this judgment, the Railway Company has appealed.

The first question presented is whether the trial Judge erred in overruling appellant's motions, timely made, for a nonsuit and a directed verdict upon the grounds that there was no proof of actionable negligence or wilfulness on the part of appellant and that the death of respondent's intestate resulted solely from her own gross negligence and wilfulness but if not, she was, as a matter of law, at least guilty of

contributory negligence, gross negligence and wilfulness. The same contention was raised on the first appeal. In overruling same, we said: "As the case must be remanded for a new trial, we shall not discuss in detail the evidence, which was conflicting. In our opinion, it was sufficient to carry to the jury the issues of both actual and punitive damages." There was no petition for a rehearing by appellant.

We think our conclusion on the first appeal that the evidence was sufficient to warrant submission of the case to the jury as to both actual and punitive damages is the "law of the case." *Steele v. Atlantic Coast Line R. Co.,* 109 S. C. 104, 95 S. E. 180; *Brown v. Piedmont Mfg. Co.,* 109 S. C. 343, 96 S. E. 138; *Johnson v. Atlantic Coast Line R. Co.,* 116 S. C. 135, 107 S. E. 31; *Jenkins v. Southern R. Co.,* 145 S. C. 161, 143 S. E. 13; *Cato v. Atlanta & C. A. L. Ry. Co.,* 164 S. C. 123, 162 S. E. 239; *Cohen v. Standard Accident Insurance Co.,* 203 S. C. 263, 17 S. E. (2d) 230; *Holly Hill Lumber Co., Inc., v. McCoy,* 210 S. C. 440, 43 S. E. (2d) 143; *Royal Crown Bottling Co. v. Chandler,* 228 S. C. 412, 90. S. E. (2d) 489.

Although we granted appellant's counsel permission to argue against that portion of our previous opinion in which we held that the motions for nonsuit and directed verdict were properly overruled, we are now convinced that appellant should not be permitted to relitigate the question. On the first appeal it was fully argued and carefully considered by this Court. After the decision was rendered, appellant again had the opportunity of raising the question by petition for a rehearing but failed to do so.

We find no merit in appellant's argument that since we concluded on the first appeal that there must be a new trial for errors in the charge, the question of whether the Court below committed error in refusing to direct a verdict for the defendant "was not necessarily involved, that is to say, was not the essential ground of the decision." We think it was necessary on the previous appeal that we decide whether or

not the trial Judge erred in refusing the motions for nonsuit and directed verdict. Logically this was the first question to determine, for if there had been error in this respect it would have been unnecessary to consider any other questions.

Of course, the doctrine of "the law of the case" has no application where the facts relating to the question decided are substantially different on a second appeal. In order to escape the application of the doctrine, however, there must be a material change in the evidence. Additional evidence cumulative in nature will not take the case out of the rule and constitute a material change where evidence of the same class and character was considered on the former appeal. 3 Am. Jur., Appeal and Error, Section 1000.

After a painstaking examination of the transcript of record on the former appeal, we find that the testimony with respect to the issues of negligence and wilfulness and contributory negligence, gross negligence and wilfulness was substantially the same on both trials. Respondent's proof as to liability was certainly no weaker on the second trial. Counsel for appellant have set out in their brief numerous alleged variances but none has any material bearing on the question of a directed verdict. Some of the differences mentioned relate solely to the issue of damages; some to the order in which the witnesses testified. Attention is also called to certain additional testimony offered at the second trial but it was of a cumulative nature. Testimony of the same character was considered by us on the former appeal.

It is next contended that the Court erred in permitting respondent "to prove abandonment of the spur track involved." We think appellant's counsel have misapprehended the position taken by respondent. He neither alleged nor sought to prove that the track had been abandoned. His allegation was that "the defendant ran an extra, or special, train on and over the said practically abandoned and seldom used spur track * * *." The Court admitted

in evidence a picture taken two days after the accident showing grass and weeds in the roadbed on each side of the crossing. As stated by the trial Judge, this picture was not offered "for the purpose of showing that the spur track was abandoned, but to show the conditions that existed at the time of the collision." It was clearly admissible for this purpose. It is also urged that the Court erred in permitting several witnesses to testify that the spur track was very infrequently used. This testimony was also competent. It was proper to show the general character, description, and use of the crossing at which the accident happened, including the extent and frequency with which the crossing was used by travelers on the highway and "by trains passing over the railroad tracks." 75 C. J. S., Railroads, § 847. Also, see annotation in 161 A. L. R., at page 118.

It is also claimed that the Court erred in admitting in evidence the mortuary table (Section 26-12 of the 1952 Code). It is argued that since there was no proof of any pecuniary loss to the beneficiaries, there was no issue to which the mortuary table was applicable. If, as we shall hereinafter show, respondent was entitled to recover any damages sustained by the two brothers on account of loss of companionship and society, we think it was proper to show the probable life expectancy of the deceased. *Cook v. Atlantic C. L. R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 133 A. L. R. 1144.

Since for the reasons hereinafter stated there must be a new trial, we shall not pass upon Exceptions 10 and 11 relating to alleged improper argument.

The final question is whether the verdict is so palpably excessive as to warrant the inference that it is the result of caprice, passion, prejudice or other considerations not founded on the evidence. If so, it is inherently vicious and cannot stand. On the other hand, if the amount indicates mere undue liberality on the part of the jury, the responsibility of reducing the verdict to proper proportions

by granting a new trial *nisi* was that of the trial Judge. *Bowers v. Charleston & Western Carolina R. Co.*, 210 S. C. 367, 42 S. E. (2d) 705; *Vernon v. Atlantic C. L. R. Co.*, 221 S. C. 376, 70 S. E. (2d) 862.

In an action for wrongful death the statute, Section 10-1954, authorizes the jury to give such damages, including in a proper case exemplary damages, "as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." In *Mishoe v. Atlantic C. L. R. Co.*, 186 S. C. 402, 197 S. E. 97, 104, it is stated that the elements of damage which may be considered under this statute "include: (1) Pecuniary loss, (2) mental shock and suffering, (3) wounded feelings, (4) grief and sorrow, (5) loss of companionship, and (6) deprivation of the use and comfort of the intestate's society, * * *".

Respondent's intestate, a woman of good health and at the time of the accident approximately 58 years of age, and her husband, a retired Naval officer, who was instantly killed in this accident, resided at Beaufort, South Carolina. She was survived by a sister, who lived in Florida, and two brothers who resided in New York. As previously stated, the sister died after the first trial, leaving the two brothers as the sole persons for whose benefit this action is brought. Neither of the brothers testified and it was conceded in oral argument that they were not present at the trial. There is no explanation in the record for their absence. The only testimony on the question of damages was that given by the sister on the first trial and used by respondent on the second trial. The relevant portion is as follows:

"Q. Mrs. Dressing, what was the age of your sister? A. She was born on 24 May 1892.

"Q. Mrs. Dressing, were you older than your sister? A. I was supposed to be a little younger.

"Q. You visited her and she visited you quite a bit? A. Yes, we were together a lot, she lived with me most of the time since 1921 while her husband was at sea.

"Q. State whether you and your brothers, James Monroe Baker and William Eugene Baker, were very close to your sister, the late Billie Baker Turner? A. Yes, each visited in the other's homes and we spent most all of the time in one home or the other."

We have held that where the relation of husband and wife, or of parent and minor child exists, a pecuniary loss to the survivor from the fact of death will be presumed. *Gilliam v. Southern Railway Co.,* 108 S. C. 195, 93 S. E. 865. But we refused in our previous decision of this case to extend this presumption to brothers and sisters. In fact, it seems to be conceded that the two brothers suffered no pecuniary loss from the death of respondent's intestate. The only elements of damage, therefore, which may be considered are grief, mental anguish and loss of society and companionship.

In *Mock v. Atlantic C. L. R. Co.,* 227 S. C. 245, 87 S. E. (2d) 830, 836, an action for the wrongful death of a twelve year old boy, brought for the benefit of the parents, the Court said: "It will be assumed that he was held in loving esteem by his parents and that they experienced the natural feelings of grief in the loss of a loving son." However, in the case of collateral relatives, the presumption, if any, of this kind would not be a strong one. Where the action is brought for the benefit of brothers and sisters, the amount of recovery must necessarily be gauged by the intimacy of the relation, association, and the feelings of the beneficiaries toward the deceased. In *Coliseum Motor Co. v. Hester,* 43 Wyo. 298, 3 P. (2d) 105, 111, the Court said: "It must be borne in mind that in the nature of things the suffering caused by death to survivors is not alike in all cases. We can readily see that a mother would grieve very deeply. But it has been recognized by the courts that, except, perhaps, under exceptional circumstances, collateral or remoter relatives should not be considered, or considered only to a limited extent, in this connection."

It has been further held that from the mere fact of the death of a brother or sister, there is no presumption of loss of companionship. In *Kelly v. Lemhi Irrigation & Orchard Co., Ltd.*, 30 Idaho 778, 168 P. 1076, 1078, an action for wrongful death was brought for the benefit of four married sisters and two older brothers of the deceased. In discussing the circumstances under which recovery may be had for loss of society and companionship, the Court said:

"Each case must stand on its particular facts. Under the usual conditions of life it is not probable that in the ordinary case a collateral heir can show any substantial damages because of loss of society or companionship. However, if in any case a collateral heir can prove there have been such close companionship and relations between himself and the deceased that he has suffered a substantial loss from the termination of that companionship, then the jury may be allowed to consider that fact as an element of damages in a similar way, although perhaps not generally to the same degree, as it would be considered if the relationship had been in the direct line instead of collateral. *Of course, no such companionship is implied from the mere relationship; it must be proved to have existed.* If such fact be proved, then it may be considered as an element of damages in all cases which come under the statute." (Italics ours.)

Also, see *Hepp v. Ader*, 64 Idaho 240, 130 P. (2d) 859.

The only testimony relating to damages that we have in this case is that the deceased and her brothers and sister were very close and visited in one another's homes. From this it might be reasonably inferred by a jury that there was, at least to a limited extent, some mental suffering and loss of companionship on the part of the brothers. The delicate question is whether the compensation awarded for these elements is so grossly excessive as to warrant the inference that it was the result of caprice, passion, prejudice or other considerations not founded on the evidence. This phrase like the unhappily framed expression "abuse of discretion" is frequently misunderstood.

We have held that the term "abuse of discretion" does not "carry with it an implication of conduct deserving censure", *Payne v. Cohen,* 168 S. C. 459, 167 S. E. 665, 668, and does not imply "any reflection" upon the person in whom the discretion is vested. *Bishop v. Bishop,* 164 S. C. 493, 162 S. E. 756. So, too, the phrase "passion and prejudice" does not necessarily imply bad faith, wrongful purpose or moral delinquency. *Zibbell v. Southern Pacific Co.,* 160 Cal. 237, 116 P. 513. In *Watson v. Paschall,* 100 S. C. 281, 84 S. E. 531, 532, this Court said that "a verdict may properly be said to be capricious if it is against the overwhelming weight of the evidence."

Ordinarily the only means of discovering the existence of passion and prejudice as influencing the verdict is by comparing the amount of the verdict with the evidence before the trial court. In 15 Am. Jur., Damages, Section 205, page 623, it is stated: "The size of the verdict alone may show that it must have been the result of passion or prejudice, as for instance, when it is apparent that the award is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury."

As pointed out by Mr. Justice Legge in his concurring opinion in *Mock v. Atlantic C. L. R. Co., supra,* 227 S. C. 245, 87 S. E. (2d) 830, 840, the propriety of the exercise by this Court of its power to set aside a verdict on the ground that it is so shockingly excessive as to manifestly show that the jury was actuated by passion, prejudice or other considerations not founded on the evidence "is inherently difficult where, as in the case at bar, there is no tangible factor of damage, such as earning capacity, and the standard of recovery must be measured only by such imponderables as mental anguish, grief and loss of companionship." The valuation to be placed upon these elements is wisely left to the discretion of the jury. But it does not follow that the amount which may be awarded is wholly without any limitation. The determination is not left to the

whim or caprice of the jury. There must be some semblance of a basis for justifying the verdict.

Even after giving due consideration to the diminished purchasing power of the dollar, we are convinced that upon the scant evidence presented, a verdict for $35,-000.00 actual damages (reduced by the trial Judge to $29,-000.00) is not supported by the evidence and cannot be explained on any rational basis. Whether it was the result of sympathy, passion or prejudice or whether it was due to mistake or misapprehension of the charge and issues involved, the result is the same. In the discharge of our duty we cannot escape the responsibility of setting it aside.

The verdict at the second trial was larger than that on the first trial, although included as a beneficiary on the first trial was the sister who testified that she lost her health as the result of grief from the death of respondent's intestate. It may not be amiss to add that while on the last appeal we characterized the first verdict as "unquestionably a very large one", the question as to whether it was so excessive as irresistibly to give rise to the inference of mistake, passion or prejudice was not raised.

It is true that by a closely divided decision in the *Mock case* we allowed a verdict to stand for $50,000.00 actual damages and $15,000.00 punitive damages. But there is quite a difference in degree between the mental suffering, grief and loss of companionship suffered by a parent as a result of the death of his child and that ordinarily suffered by an adult brother from the loss of his sister.

In view of our conclusion as to actual damages, we need not determine whether the amount awarded for punitive damages is so inordinately excessive as to be contrary to reason or the result of sympathy, passion or prejudice.

Judgment reversed and case remanded for a new trial.

LEGGE and MOSS, JJ., and G. DUNCAN BELLINGER, Acting Associate Justice, concur.

TAYLOR, J., concurs in result.