17389

William F. TAYLOR, Respondent, v. James Earl HARDEE, doing business under the firm name and style of Coastal Speedway, Appellant.

(102 S. E. (2d) 218)

*Messrs. J. J. Able, Jr.,* and *Long & Long,* of Conway, *for Appellant,*

*Messrs. J. Reuben Long* and *Suggs & McCutcheon,* of Conway, *for Respondent,*

February 11, 1958.

STUKES, Chief Justice.

Upon trial of this case the jury returned verdict for ▮ plaintiff for $40,603.05 actual damages for personal injuries suffered by him when his seat and footboard in the grandstand collapsed and he fell some distance to the ground, at automobile races at Myrtle Beach which he was attending as a patron. The racetrack was operated by the defendant. On motion for judgment notwithstanding the verdict, or in the alternative for new trial, the court reduced the verdict, by order *nisi,* by the sum of $10,000.00 which plaintiff remitted. The appeal of the defendant is from the judgment and the denials by the court of the usual defensive motions. The questions presented on appeal are: (1) Was there sufficient evidence of negligence to sustain the verdict? And (2) Was the verdict excessive and based upon passion and prejudice? The nature of the questions requires that the evidence be considered in the light most favorable to the respondent. 18 S. C. Dig., Trial, 165, 178, pp. 114, 119.

The complaint alleged several specifications of negligence: the use of rotten defective and faulty boards in the construction of the spectators' seats; failure to properly inspect them; and the knowledge, actual or constructive, of appellant that the boards were apt to break and injure spectators.

Appellant completed construction of the stand only two weeks before the accident. Steel uprights were in place when he rented the premises and he purchased used lumber for the seats and footboards. It was obtained from a railroad company which had used the lumber in a discarded roundhouse, and it was smoked and sooty. Appellant testified that it had been in use in the roundhouse for fifteen years; but the sheriff testified for respondent that appellant told him that some of the lumber was fifty years old. The planks were

nine feet long and were cut to fit the steel uprights, which were nine feet apart, and there was no support between the uprights. Bolted to the latter were wooden cleats to which the boards were nailed at the ends with large nails, and they also rested on the uprights.

Respondent, his six-year-old son, and two other adults sat on one seat, which was considerably less than full occupancy of the space. He and other spectators, who were sitting nearby, testified that two boards, the one on which respondent sat and another, which was the footboard, broke, and respondent and his seatmates fell through the stand to the ground below. He was taken by ambulance to a hospital where he was found to have suffered a spinal fracture and other less serious injuries. The distance of the fall was variously estimated by the witnesses for respondent and appellant at from nine to twenty feet; it was from about halfway up the stand which contained twenty or more rows of seats.

There was evidence that in the cutting and fitting of the seats and footboards, rotten ends of some of them were cut off. The broken planks were seen by some of the witnesses after the accident, but had disappeared by the time of the trial; they were kept for a time in the office of appellant and he was unable to explain their disappearance; in his words, "it just vanished." One of respondent's witnesses, who was the Chief of Police, was on the scene and he testified that one of the broken planks which he saw was doty (decayed). He never saw it afterward although he later saw a solid board in appellant's office. The evidence as to the thickness of the boards was in conflict; some of the witnesses were of opinion that they were two inches thick, but appellant testified that they were three-inch planks, of "pitch pine" and sound. However, his testimony thereabout was inconsistent. He said the cleats were in thickness, quoting from his testimony, "same as the seat, probably two and a half inches." Again, he said that "the upper half (of the stand) about middle ways up was the thicker material"; and this was after he had testified that it was all of the same type material.

Appellant testified further that the planks were fitted and put in place under the supervision of the building inspector of the municipality of Myrtle Beach, pursuant to permit, and that he (appellant) personally inspected the stand for safety. In addition, he said, it was inspected by the "executive manager" of NASCAR, which is the National Association of Stock Car Automobile Races; but that person did not testify, nor did the building inspector of Myrtle Beach. Indeed, appellant himself was his only witness as to the facts of the accident.

He admitted in his testimony that two boards, a seatboard and a footboard, were missing from the stand after the accident, one of them broken in two at about the center of it, and the other "twisted out", meaning that the nails had pulled out. His theory was that the plank on which respondent sat broke, and that as he and the others fell, they grasped the footboard and pulled it loose; he could not say how many nails were in the latter, certainly one in each end, he said, but whether more he could not say.

In view of the applicable law, to which we shall presently advert, the foregoing resume of the evidence is convincing that it compelled submission to the jury of the issue of the negligence of appellant in one or more of the particulars alleged in the complaint. Therefore there was no error in the denial of appellant's contrary motions; and he did not except to the court's instructions to the jury.

There appears to be no case of similar facts in our reports. However, there have been many elsewhere. They are found in 98 A. L. R. 557 and preceding annotations there cited, and in a more recent annotation in 21 A. L. R. (2d) 420, entitled, "Liability for injury to customer or patron from defect in or fall of seat." Of the decisions reviewed in the last cited perhaps that closest to this in facts in *Logan v. Agricultural Soc. of Lenawee County*, 156 Mich. 537, 121 N. W. 485, 487, digested in 21 A. L. R. (2d) 443, 444. Defendant was an agricultural society and conducted an annual

fair, of which horseracing was a popular feature, and for which it charged admission. The viewing stand was constructed in the usual manner, of plank seats. The seat upon which plaintiff sat broke and she fell six feet to the ground. The complaint alleged the duty to exercise proper care in the construction of the stand, the duty to inspect, and the existence of defects. Liability was upheld upon the conclusion that the evidence was susceptible of the inference that defendant would have discovered the defect if it had properly performed its duty of inspection. We quote from the opinion:

"It is insisted that the defendant had performed its duty in regard to inspection. That it employed competent men to inspect these bleachers before the opening of the fair is established, and the court so instructed the jury. The patrons of the defendant did not assume a careless and negligent inspection by a competent inspector * * * The defendant's duty toward the plaintiff, who was invited upon its premises, and had paid a consideration for admission and a seat, was not only to employ a competent inspector, but to see that the competent inspector did his duty. These inspectors testified to what they did; one that he walked under the seats looking at the structure to see if he could detect defects, the other that he walked up and down on the seats between the risers, testing them by jumping up and down upon them. Opposed to this is the fact that the seat broke with a person sitting on it weighing only 143 pounds; that the ends were so rotten that they pulled out of the nails, and that the rottenness, according to the plaintiff's witnesses, was apparent on the underside of the plank. The question of a sufficiently careful inspection was properly submitted to the jury."

The editor deduces from the decisions the following general rule, 21 A. L. R. (2d) 425: "The conclusion to be drawn generally from cases discussing the liability of proprietors or operators of places of amusement such as theaters, circuses, baseball and football games, boxing and wrestling exhibitions, fairs, etc., is that such operators or

proprietors owe to patrons the duty of exercising ordinary or reasonable care with respect to the condition of the seats furnished such patrons. One element of this duty is that of making a reasonably thorough inspection from time to time, to see that the seats are safe for occupancy."

There are two decisions of the Supreme Court of Ohio, subsequent to the last cited annotation, which sustained verdicts for the plaintiffs. In *Witherspoon v. Haft,* 157 Ohio St. 474, 106 N. E. (2d) 296, the plaintiff was on the top row of temporary bleachers at a high school football game and, upon an exciting play, stood and unintentionally pushed the top board back, fell backward nine or ten feet and was injured. It was held to be a jury issue whether it was negligence not to securely fasten the board to the supporting timber upon which it rested, despite evidence that defendant followed a method frequently used by others without accident. *Brown v. Cleveland Baseball Co.,* 158 Ohio St. 1, 106 N. E. (2d) 632, involved the collapse of temporary bleachers at a professional football game. The court held that negligence was properly found to result from the crowding of more people into the stands than they could reasonably be anticipated to withstand, and in the failure of the defendant to properly supervise and maintain the stands before and during the use of them at the game.

By the apparent weight of authority (with which we agree) the liability of a racetrack proprietor to a patron is comparable to that of a merchant to his customer. He is not an insurer of safety but does owe the duty to keep his premises free of defects of which he knows or, in the exercise of reasonable care and prudence, should have known or foreseen. There is no need to elaborate or fortify the rule by the citation of authority here. That was done at length in the very recent case of *Hunter v. Dixie Home Stores,* S. C., 101 S. E. (2d) 262. The rule was declared and applied in *Pope v. Carolina Theater,* 172 S. C. 161, 173 S. E. 305, and *Perry v. Carolina Theatre,* 180 S. C. 130, 185 S. E. 184, which involved injuries to patrons

of a place of amusement or entertainment. It should be added, however, that a different and more stringent rule of liability, akin to that of carrier to passenger, appears to exist in the case of operators of riding devices such as a ferris wheel, merry-go-round, or the like. 21 A. L. R. (2d) § 15, p. 445, and the earlier annotations to which reference has been made.

Turning to question (2), there was ample evidence to sustain the amount of the verdict as reduced by the trial judge. Respondent is a young man, thirty-one years old at the time of the accident, with a statutory life expectancy of over thirty-five years. There is a probability of permanent physical handicap from his back injury. He was still suffering pain and disability, and wearing a brace at the time of the trial, which was about a year and a half after the injury. He was hospitalized for about two weeks, in bed at home for eight weeks more; had been treated by two physicians, including a bone specialist. The odd-dollars part of the verdict, $603.85, was the amount of hospital and medical expenses incurred to time of the trial. Respondent was a trucker and owned his motor trucks by the operation of which he formerly earned about $100.00 per week net which has been reduced by his physical impairment to about $60.00, according to his testimony.

The foregoing facts justify the amount of the verdict, if justification were necessary by this court; but it is not. We cannot reduce the verdict and can reverse for excessiveness only when it is so out of proportion to the evidence that it clearly indicates that it was influenced by partiality, prejudice, passion, caprice or other consideration not founded upon the evidence. *Nelson v. Charleston & Western Carolina Ry. Co.*, 231 S. C. 351, 98 S. E. (2d) 798. Reduction of the verdict can only be made by the trial judge, which is his responsibility. The power was exercised in this case upon proper motion, doubtless with wisdom and discretion. The case is similar in this respect to *Jackson v. Solomon*, 228 S. C. 225, 89 S E. (2d) 436, where the trial

court reduced the verdict for damages for personal injuries from $36,000.00 to $29,000.00 and we affirmed opinion by former Chief Justice Baker. For other pertinent cases see **3** S. C. Dig., Appeal and Error, Key Nos. 979(5) and 1004.

The judgment is affirmed.

TAYLOR, OXNER, LEGGE and Moss, JJ., concur.