911 P.2d 546

**FLORI CORPORATION, an Arizona corporation, dba Turf Irrigation & Water Works Supply; et al., Plaintiffs/Appellants,**

v.

**YELLOW ROSE DEVELOPMENT & CONSTRUCTION, INC., an Arizona corporation, and the City of Tucson, a municipal corporation of the State of Arizona, Defendants/Appellees.**

No. 2 CA–CV 95–0046.

Court of Appeals of Arizona, Division 2, Department A.

July 25, 1995.

Review Denied Feb. 21, 1996.*

---

delay was partially because of another judge's illness.

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Kevin John Witasick & Associates by Kevin John Witasick and William C. Knoche, Phoenix, for plaintiffs/appellants.

Gabroy, Rollman & Bossé by Richard M. Rollman and Richard A. Brown, Tucson, for defendants/appellees.

*OPINION*

LIVERMORE, Presiding Judge.

Defendant City of Tucson contracted with defendant Yellow Rose Development & Construction, Inc., for certain improvements on Speedway Boulevard. Yellow Rose posted payment and performance bonds, obtained from Pacific States Casualty Co., pursuant to A.R.S. § 34–222. In mid-April 1993, one of Yellow Rose's subcontractors notified Tucson that it had not been paid, and also reported that another subcontractor might not have been paid. Shortly thereafter, the inquiring subcontractor learned that Pacific States was in a court-ordered conservatorship in California. The city was informed of this development. After learning of these facts the city made two progress payments to Yellow Rose, the last being on May 10, 1993. Thereafter Pacific States went into liquidation and the City terminated its contract with Yellow Rose. Its contract with another to complete the project cost it substantially more than the original contract price with Yellow Rose. This suit was brought by a number of sub-

contractors of Yellow Rose who did not receive payment. They appeal from a summary judgment in favor of the City. We affirm.

Both the plaintiffs and the City had their expectations defeated in this case. Plaintiffs expected Yellow Rose to pay its bills. The City expected Yellow Rose to complete its contract. Yellow Rose's failures caused both plaintiffs and the City damages. Normally, those damages could be recovered from the company issuing performance and payment bonds. Again, expectations were defeated by the financial insolvency of the bonding company. This is undoubtedly an unhappy situation for all involved. We do not believe, however, that plaintiffs' unhappiness permits a shift of their losses to the City.

■ It is argued that the City owed a duty to subcontractors to insure that a payment bond was always in effect from a financially secure surety. We join most other courts in rejecting that claim. The provision of A.R.S. § 34–222 that a contractor "shall furnish" a payment bond imposes a duty on the contractor, not on the city employing the contractor. See *Hardaway Co. v. United States Army Corps of Engineers*, 980 F.2d 1415 (11th Cir.1993); *O and G Industries, Inc. v. Town of New Milford*, 229 Conn. 303, 640 A.2d 110 (1994); *DeKalb County v. J & A Pipeline Co. Inc.*, 263 Ga. 645, 437 S.E.2d 327 (1993); *Barnes & Sweeney Enterprises, Inc. v. City of Hazel Park*, 169 Mich.App. 422, 425 N.W.2d 572 (1988). The legislature sought to protect subcontractors by imposing a requirement that general contractors furnish a payment bond. It did not provide that a public entity would guarantee the debts of the general contractor nor the financial stability of bonding companies. Even if a duty existed, summary judgment was still appropriate. There is no evidence that had the city required a new bond on learning of the probable insolvency of the bonding company, that Yellow Rose could have complied or that such a bond would have covered sums owed plaintiffs at the time the new bond was issued.

■ Pointing to the provision of the contract between the City and Yellow Rose that permits the City to require additional security for paying subcontractors if the initial bond becomes unacceptable, plaintiffs contend that they may sue as third-party beneficiaries of that provision. Because the provision is permissive, it can hardly be construed as imposing a contractual duty on the City to require such additional security. There being no breach of contract by the City, no action against it lies. Moreover, there is no evidence that had such security been requested it would have been forthcoming.

■ Finally, it is argued that plaintiffs should have an "equitable lien" on those sums of money that were the subject of two progress payments after the City had knowledge of some nonpayment of subcontractors by Yellow Rose and the financial insolvency of Pacific States, those sums that were owed Yellow Rose but not paid, and that sum representing contract retention to insure full performance. Permitting a recovery on this theory is supported by *Kennedy Electric Co. v. United States Postal Service*, 508 F.2d 954 (10th Cir.1974). That case is distinguishable in three respects. First, no bond was ever posted. Second, payments were made to the general contractor's assignee in violation of governmental regulations. Third, contract retention sums were claimed as liquidated, not actual, damages. In the present case, on the contrary, bonds were posted, no regulations were violated nor was any other illegality present in making progress payments to Yellow Rose, and any sums due Yellow Rose but retained by the City were insufficient to pay its actual damages from having to recontract for completion of the project. *Kennedy Electric*, in short, is not applicable. We would, in any event, decline to follow it because we see nothing "equitable" in requiring a public entity to pay not only its own losses, but those of others when a general contractor fails to perform its contractual obligations.

Affirmed.

DRUKE, C.J., and ESPINOSA, J., concur.