717 S.E.2d 603

SLOAN CONSTRUCTION COMPANY, INC., Respondent,

v.

SOUTHCO GRASSING, INC., Wanda Surrett and
South Carolina Department of Public
Transportation, Defendants,

Of Whom South Carolina Department of Public
Transportation is the Appellant.

No. 27061.

Supreme Court of South Carolina.

Heard May 4, 2011.
Decided Oct. 31, 2011.

Beacham O. Brooker, Jr., SCDOT, of Columbia, for Appellant.

T.S. Stern, Jr. and V. Elizabeth Wright, of Covington Patrick Hagins Stern & Lewis, of Greenville, for Respondent.

Justice HEARN.

This is the second appeal involving a highway construction project and the payment bond for it required by the Subcontractors and Suppliers Payment Protection Act (SPPA). After examining *Sloan Construction Co. v. Southco Grassing, Inc.*, 377 S.C. 108, 659 S.E.2d 158 (2008) (*Sloan I*), we find a

governmental entity does not have a continuing obligation to maintain a payment bond. However, we hold that *Sloan I* is the law of the case and affirm the circuit court's order that SCDOT was liable to Sloan Construction. We further affirm the circuit court's finding SCDOT did not meet its burden in proving Sloan Construction failed to mitigate its damages.

## FACTUAL/PROCEDURAL BACKGROUND

Southco Grassing, Inc. (Southco) and SCDOT were parties to a contract in January 2000 for the performance of highway maintenance in Greenville, South Carolina. In connection with the contract and the SPPA, Southco supplied to SCDOT a performance bond and a payment bond with Southco as principal and Amwest Insurance Company (Amwest) as surety in the penal sum of 100% of the face value of the contract. On November 27, 2000, Sloan Construction Company entered into a subcontract with Southco, and it is undisputed that Sloan Construction properly performed all of its work. During the course of performance on the project, Amwest was adjudged insolvent in Nebraska and ordered to be liquidated; all outstanding bonds, including the bond with Southco, were cancelled. A Nebraska court approved a distribution amount of forty percent of each claim to be relinquished to claimants who previously held bonds.[1]

On July 28, 2001, SCDOT wrote Southco, advising it of the need to obtain a replacement surety company for the payment bond. Southco did not respond or replace the bond. Sloan Construction submitted to Southco its final billing on October 31, 2001; however, Southco never paid any amount of money to Sloan Construction. A few months later, on January 15, 2002, Sloan Construction notified SCDOT of its demand for payment from SCDOT by reason of Southco's failure to pay. Shortly thereafter, on February 6, 2002, Sloan Construction's lawyer advised SCDOT that SCDOT was liable for its failure to require Southco to obtain a bond in substitution for the cancelled Amwest payment bond. The following day, SCDOT

---

1. While Amwest was adjudged insolvent in 2001, the distributed amount was not approved until 2009. The trustee in Nebraska apparently represented that distributions of no less than a total of fifty percent of each bond claim would be made before Amwest's estate was exhausted.

responded that "[a]ll payments under the contract with South-co have not been made. It is likely some funds may remain and may therefore be available to at least partially satisfy your client's claims." Wanda Surrett, Southco's principal, represented in writing to SCDOT on March 6, 2003, that all payments had been made in full for work performed in connection with the project. Later that same month, SCDOT completed its checklist confirming Southco had completed all contract work and dispersed to Southco its final retainage. However, Southco never paid Sloan Construction for its work.

Thereafter, Sloan Construction commenced this action against Southco, Surrett, SCDOT, and Greer State Bank, but it made no claim against Amwest. Sloan Construction alleged negligence against SCDOT pursuant to the South Carolina Tort Claims Act and breach of contract as a third party beneficiary of Southco and SCDOT's contract, both relating to SCDOT's obligation under the SPPA to ensure a contractor is properly bonded. SCDOT moved to dismiss Sloan Construction's complaint against it under Rule 12(b)(6), SCRCP, and the circuit court granted the motion on the ground that there was no private right of action to sue for violations of the SPPA. The court of appeals affirmed this dismissal, but we reversed that decision in *Sloan I* and remanded the matter for a determination of SCDOT's liability to Sloan Construction consistent with the opinion. 377 S.C. at 121, 659 S.E.2d at 166. On remand, the circuit court found SCDOT liable in the amount of $26,393.37. The court also held SCDOT did not meet its burden of proof in showing Sloan Construction failed to mitigate its damages when it did not file a claim against Amwest. This appeal followed.

## ISSUES PRESENTED

SCDOT raises two issues on appeal:

I. Did the circuit court err in ruling SCDOT had a duty to maintain a payment bond under the SPPA?

II. Did the circuit court err in ruling SCDOT failed to meet its burden of proof regarding mitigation?

## LAW/ANALYSIS

### I. DUTY TO MAINTAIN BOND

 In *Sloan I,* we granted certiorari on the following issue: "Did the court of appeals err in holding that statutory bond requirements applicable to public projects do not create an enforceable duty giving rise to a private right of action by a subcontractor against a government entity?" 377 S.C. at 112, 659 S.E.2d at 161. In answering that question, we held that "the duty created under the SPPA gives rise to a private right of action against a government entity for failure to ensure that a contractor is properly bonded." *Id.* at 118, 659 S.E.2d at 164. We instructed that the SPPA is separate from the "little Miller Acts" enacted in various states which address the problem of subcontractors not being able to use liens on public property to secure payment. *Id.* at 114, 659 S.E.2d at 161–62. As we noted, the SPPA was intended to give stronger payment protection to subcontractors on government projects than the "little Miller Acts." *Id.* at 115, 659 S.E.2d at 162. As to the third-party beneficiary claim, we first determined that public policies contained in the SPPA plus its applicability to public procurement incorporated the bond requirements into construction contracts. *Id.* at 120, 659 S.E.2d at 165. We then found that because subcontractors are the only ones with a financial stake in enforcing bond requirements, they are direct third-party beneficiaries to these contracts and could bring suit against governmental entities for their failure to ensure a payment bond is properly in place. *Id.*

We stated in *Sloan I* that "a government agency's failure to secure *and maintain* statutory bonding as required by the SPPA" gives rise to an action against the agency. *Id.* at 120, 659 S.E.2d at 165 (emphasis added). Sloan Construction thus argues SCDOT's claim that it had no duty to continuously monitor the bond was already determined in *Sloan I* and therefore is the law of the case. We agree.

 Under the law of the case doctrine, "a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court." *Judy v. Martin,* 381 S.C. 455, 458–59, 674 S.E.2d 151, 153 (2009) (citing *Bakala v. Bakala,* 352 S.C. 612, 632, 576 S.E.2d 156,

166 (2003)). "The law of the case applies both to those issues explicitly decided and to those issues which were necessarily decided in the former case." *Nelson v. Charleston & Western Carolina Railway Co.*, 231 S.C. 351, 357, 98 S.E.2d 798, 800 (1957). While *Sloan I* did not specifically raise the issue of maintenance of the payment bond, this Court's holding resolved that issue in this matter. However, although *Sloan I* requires us to affirm the circuit court's ruling that SCDOT had a duty to maintain the bond in this case, we take this opportunity to address whether a governmental entity otherwise has a duty to continuously monitor and maintain a bond on a construction project.

 The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Kiriakides v. United Artists Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used...."). If a statute's language is plain, unambiguous, and conveys a clear meaning, "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 582 (2000). "In construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect." *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998).

As recognized in *Sloan I*, the SPPA creates a duty on the part of SCDOT to secure an appropriate bond for its projects, the breach of which gives rise to a cause of action on behalf of the contractor or subcontractor. In pertinent part, the SPPA reads as follows:

(1) When a governmental body is a party to a contract to improve real property, and the contract is for a sum in excess of fifty thousand dollars, the owner of the property shall require the contractor to provide a labor and material payment bond in the full amount of the contract....

. . . .

(3) For the purposes of any contract covered by the provisions of this section, it is the **duty of the entity contracting**

**for the improvement to take reasonable steps to assure that the appropriate payment bond is issued and is in proper form.**

S.C.Code Ann. § 29–6–250 (emphasis added).

Some jurisdictions have determined whether a bonding statute places an affirmative duty on government entities to require contractors to provide a payment bond for public works projects. *Compare Med. Clinic Bd. of the City of Birmingham–Crestwood v. E.E. Smelley,* 408 So.2d 1203, 1204 (Ala.1981) (finding liability against a municipality for failing to require a bond based on statute), *with O & G Indus., Inc. v. Town of New Milford,* 229 Conn. 303, 640 A.2d 110, 111 (1994) (finding no liability for failing to require a bond). In addition, courts have also considered whether such statutes place a duty on government entities to ensure that a contractor's bond is valid. *See, e.g., DeKalb County v. J & A Pipeline Co.,* 263 Ga. 645, 437 S.E.2d 327, 330 (1993) (holding there is a duty on the government entity to take the bond and the surety's affidavit in "specified manner and form"). However, the jurisdictions that have considered the precise issue here—whether a bonding statute places on a government entity a *continuing* duty to ensure a valid bond is maintained by a contractor throughout the course of the construction process—have answered that question in the negative.

In one of the first cases to address this issue, the Michigan Court of Appeals determined that Michigan's bonding statute imposed no such duty on a governmental body. *Barnes & Sweeney Enters., Inc. v. City of Hazel Park,* 169 Mich.App. 422, 425 N.W.2d 572, 573 (1988). In *Barnes & Sweeney,* the City of Hazel Park contracted with Conco Midwest to repair the city's streets. *Id.* Barnes & Sweeney was subcontracted to supply materials for the project. *Id.* After Conco defaulted on payments, Barnes & Sweeney discovered the payment bond obtained for the project had expired prior to the beginning of its work. *Id.* In its suit against the city and other parties, the subcontractor claimed the city had breached its statutory duty to ensure that Conco's payment bond was still valid throughout the time the subcontractor supplied materials for the project. *Id.* The trial court granted summary judgment to Hazel Park and the other defendants, and the court of appeals affirmed the finding that the city owed no duty to inform the

subcontractor of the bond's expiration or to ensure that the bond was renewed. *Id.*

The Arizona Supreme Court addressed a similar issue in *Flori Corp. v. Yellow Rose Development & Construction, Inc.,* 184 Ariz. 540, 911 P.2d 546 (Ariz.App.1995). In *Flori,* Yellow Rose and the City of Tucson contracted for certain improvements, and Yellow Rose posted payment and performance bonds obtained from Pacific States Casualty. *See* 911 P.2d at 547. One of Yellow Rose's subcontractors notified Tucson that it had not been paid, and shortly thereafter, Tucson learned Pacific States was in a court-ordered conservatorship in California. *Id.* Tucson eventually terminated its contract with Yellow Rose, and various subcontractors of Yellow Rose who did not receive payment brought suit against Tucson. *Id.* at 547–48. The subcontractors argued that Tucson owed a duty to subcontractors to ensure that a payment bond was always in effect from a financially secure surety. *Id.* The court in *Flori* rejected that claim, noting that it "joined most other courts" in so holding. *Id.*

We believe the reasoning behind these courts' rejection of a continuous duty on a government entity to ensure a viable bond is in place is sound and persuasive.

[I]t would be a herculean task for those governmental units which are engaged in a number of public works projects at any given time to continually check to ensure that a payment bond is still in force for each project and to determine the identity of the various subcontractors and suppliers and to advise them of the status of the payment bond.

*Barnes & Sweeney,* 425 N.W.2d at 575. While an unhappy situation for all parties involved in these situations, "the legislature [ ] did not provide that a public entity would guarantee the debts of the general contractor nor the financial stability of bonding companies." *Flori Corp.,* 911 P.2d at 548.

Like the statutes examined in *Barnes & Sweeney* and *Flori,* section 29–6–250, by its terms, imposes an obligation upon the entity only to ensure the appropriate bond is issued and in proper form. Holding that a government entity has a continuing duty to maintain a payment bond under the SPPA would effectively render government entities guarantors of the general contractor's payment bonds. If the government entity

has a continuing duty to maintain a payment bond under the SPPA, the reason for requiring the bond in the first place is substantially eroded. The plain language of the statute does not require the government entity to ensure the maintenance of the bond throughout the course of the project, and we discern no reason why the General Assembly would place such an onerous requirement on government entities. As a result, we hold that governmental entities do not have a duty to continuously maintain a bond in these situations.

## II. MITIGATION

SCDOT additionally argues the circuit court erred in rejecting its argument that Sloan Construction failed to mitigate its damages, thereby entitling SCDOT to offset the amounts Sloan Construction could have recovered from the Amwest liquidator had it filed a claim. The defendant has the burden of establishing the plaintiff's lack of due diligence in mitigating damages. *Adams v. Orr*, 260 S.C. 92, 98, 194 S.E.2d 232, 235 (1973). After a thorough review of the record, we find there is evidence to support the circuit court's finding that SCDOT failed to meet its burden to establish a lack of due diligence in this case. Therefore, we affirm.

## CONCLUSION

Therefore, we affirm the circuit court's ruling that SCDOT is liable to Sloan Construction for its failure to maintain a valid bond and that SCDOT did not meet its burden in proving Sloan Construction failed to mitigate its damages. However, pursuant to the clear language of the statute, governmental entities otherwise have no duty to continuously maintain a bond throughout the life of a construction project.

**AFFIRMED.**

BEATTY and KITTREDGE, JJ., concur.

TOAL, C.J., concurring in result only in a separate opinion.

PLEICONES, J., dissenting in a separate opinion.

Chief Justice TOAL.

I concur in the result reached by the majority that SCDOT is liable to Sloan Construction under our holding in *Sloan I*, and that SCDOT did not meet its burden in proving Sloan Construction failed to mitigate its damages. However, I strongly disagree with the majority's suggestion that *Sloan I* is no longer binding precedent.

The Court already squarely addressed the issue of the SCDOT's continuing duty to secure and maintain a bond under the SPPA in *Sloan I*, despite the majority's contention to the contrary. The majority relies on the statement in *Sloan I* that a governmental agency's liability under the SPPA can be premised on that agency's "failure to *secure and maintain* statutory bonding as required by the SPPA" as the determining factor of SCDOT's liability in the present action. *Sloan I*, 377 S.C. at 120, 659 S.E.2d at 165 (emphasis added). However, after stating that *Sloan I* is binding precedent under the law of the case doctrine, the majority opinion then effectively overrules *Sloan I* by holding it has no future application. In my view, we held in *Sloan I* that SCDOT had a continuing duty to secure and maintain a bond, and for this reason, we should now affirm accordingly.

Furthermore, it is my opinion that we correctly interpreted the SPPA to require a continuing duty to maintain a bond in *Sloan I. See* S.C.Code Ann. § 29–6–20(3) (stating that "it is the duty of the entity contracting for the improvement to take reasonable steps to assure that the appropriate payment bond is issued and is in proper form."). It is my firm belief that the legislature did not intend to protect a governmental entity at the expense of an innocent (and extremely vulnerable) subcontractor in enacting the bond requirement of the SPPA.[2]

Therefore, I would affirm the order of the circuit court because SCDOT had a continuing duty to maintain the construction bond under our holding in *Sloan I*. For this reason, I concur in result only.

---

**2.** I note that the actions of SCDOT in this case were particularly egregious, in that the agency possessed knowledge of Amwest's financial dissolution and was aware of Southwest's failure to secure a replacement bond, yet when charged with this knowledge, SCDOT paid Southwest anyway.

Justice PLEICONES.

I respectfully dissent because, as I stated the first time this case came before the Court, it is my opinion that the SPPA does not apply here. Moreover, the majority acknowledges that the issue of maintaining the payment bond was not before the Court in the first appeal, but concludes that the inclusion of that term in a holding renders it the law of the case. I disagree. *E.g., Berberich v. Jack,* 392 S.C. 278, 709 S.E.2d 607 (2011) (appellate court comments on unpreserved issue must be viewed as *dicta* ). I simply point out that the law of the case doctrine does not apply to mere *dicta. E.g., White's Mill Colony Inc. v. Williams,* 363 S.C. 117, 609 S.E.2d 811 (Ct.App. 2005).

I would reverse.