22279

The LANDING DEVELOPMENT CORPORATION, Caravilla Management Corporation, T. H. Olsen, J. B. Olsen, Juliam M. Durant, Frank A. Durant, Eugene L. Brantley and W. H. Van Wie, Respondents, v. CITY OF MYRTLE BEACH, Appellant.

(329 S. E. (2d) 423)

Supreme Court

*Howell V. Bellamy, David R. Gravely,* and *Henrietta U. Golding* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondents.*

*E. Windell McCrackin,* of *McCrackin & Barnett,* of Myrtle Beach, *Julius W. McKay* of *McKay & Guerard,* and *James B. Richardson, Jr.,* of *Ham & Richardson,* Columbia, *for appellant.*

Argued Dec. 14, 1984.

Decided April 8, 1985.

COLEMAN, Acting Associate Justice:

This action was brought to permanently enjoin the City of Myrtle Beach from denying respondents the opportunity to rent condominiums on a short-term basis, and from denying respondents necessary business licenses for such rentals. The City of Myrtle Beach contends that the respondents' rentals are a motel-like operation and are forbidden by the City's zoning ordinance in the zoning district where the units are located.

In 1970 the City of Myrtle Beach enacted a complete zoning ordinance which affected all property within the City. A comprehensive plan for the development of the City was the precursor of the 1970 zoning ordinance. A second comprehensive plan for the City was prepared in 1978 which blueprinted the development of the City for twenty years beginning in 1979. Each of these comprehensive plans recognized the seasonal inflation of the City's population. These plans further acknowledged that between 1970 and 1979 construction of numerous condominiums had occurred which indicates that seasonal units or vacation units comprise a substantial portion of the housing stock of the City.

The enactment of the 1970 zoning ordinance divided the City into twenty-two zoning districts one of which is classified A-3. The A-3 zoning district is described as an "accommodation, multi-family residential district." It is important to note that no time limit is fixed in the zoning ordinance as to the length of rental or any minimum rental period for permissible use within any zoning district.

All of the properties involved in this case are located in an A-3 zoning district in Myrtle Beach. The Landing Development Corporation develops and sells condominium units. It also retains ownership of several condominium units developed for short-term rentals. Caravilla Management Corporation is a property management business and manages condominium units, offering the units for short-term rentals. The remaining respondents all own condominiums in the zoning district and have offered or wish to offer their units for short-term rental.

This case was referred with finality to a master, who granted the injunctive relief against the City. The master reasoned that the City was estopped from enforcing the zoning ordinance against respondents, and that the zoning ordinance did not specifically or clearly prohibit short-term rentals in the A-3 zoning district. This Court is authorized to determine the facts of this appeal in accordance with its own view of the preponderance of the evidence. *Townes Assoc. Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). We find the City estopped from enforcing the zoning ordinance against respondents and affirm.

The resolution of the estoppel issue is critical. The essential elements of an equitable estoppel as related to the party claiming the estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) the action based thereon was of such a character as to change prejudicially the position of the party claiming the estoppel. *Murphy v. Hagan,* 275 S. C. 334, 271 S. E. (2d) 311, 313 (1980).

The zoning ordinance applicable to this case allowed the following principal uses in the A-3 zoning district:

One, two and multi-family dwellings including townhouses, condominiums, apartments, and cooperative apartments for permanent occupancy.

The ordinance permitted accessory uses consistent with those customarily found in apartment or condominium complexes. The ordinance has been amended since this dispute arose.

It does not appear from the record that "permanent occupancy" was anywhere defined in the ordinance; there is no law equating "permanent occupancy" with occupancy by a permanent resident, as argued by the City. Nothing in the record reveals that the ordinance, as written or as applied prior to this dispute, prohibited the rental of any home, condominium or apartment based on any specified duration of tenancy. It appears that the practice in the City of Myrtle Beach was to allow vacation rentals of any duration, in structures permitted by the zoning law, in all zoning districts until May of 1981.

The Director of Zoning and Housing for the City, Gary Wiggins, testified that permanent occupancy was not defined by the zoning ordinance, that he was the public official who interpreted and enforced the ordinance, and that the public can and does rely upon his interpretation of the zoning law. The facts in this case conclusively demonstrate that Wiggins was not a mere clerical functionary but was, at all times, the administrator, supervisor, and official spokesman and agent for the City in all zoning matters. Wiggins admitted that before a business license was issued to Caravilla Management Corporation, Ross Lindsay, Caravilla's president, asked him specifically if rentals were permitted in the A-3 district, and Wiggins replied that such rentals were permitted. Wiggins acknowledged that Lindsay informed him he intended to rent units on a weekly or possibly a daily basis. Wiggins previously testifed in an unrelated case that a home in even a single family residential zone in Myrtle Beach could be rented for any time period, including one night, so long as it was rented to a single family. Business licenses were issued by Wiggins' office to permit the rentals of most of the properties involved in this case. In May of 1981, Wiggins informed Lindsay that short-term rentals were not permitted in the A-3 district, and on May 25, 1981, Wiggins signed affidavits to secure warrants for Lindsay's arrest for criminal violation of the zoning ordinance.

Respondents lacked the knowledge or means to know that short-term vacation rentals were prohibited in the A-3 District. The only definitive source of information concerning the interpretation and enforcement of the ordinance was Gary Wiggins. Wiggins had, until May of 1981, consistently represented that such rentals were permitted by the ordinance. This was the policy of the City.

Respondents each spent tens of thousands of dollars as a result of their belief that short-term vacation rentals were permitted in the A-3 District. That belief was solidly founded on the City's consistent application of its zoning ordinance in allowing such rentals, statements by Wiggins that short-term rentals were permitted, and the issuance of business licenses for these rentals. Respondents' investments were made in reliance on the conduct of the City and its officials.

Respondents testified that each invested large sums of their money into their business interest that they would not have otherwise spent had the rentals been forbidden in the district. Caravilla's business is the management of these properties, and it bought supplies and equipment to enter into this business. Landing Development Corporation specially adapted developments for short-term rental, at significant cost. Individual respondents bought condominium units for investment purposes, relying upon higher rental income from short-term tenancies to underwrite the costs of the investment. To allow the City to enforce its present interpretation of the zoning ordinance against respondents would prejudicially alter the financial positions of the respondents.

The City's argument that Caravilla carried on a motel operation expressly forbidden by the ordinance in the A-3 district is untenable. The units were individually owned and offered for rental through the agency of Caravilla. The fact of short-term rentals and the availability of convenience services to tenants do not operate to convert individually owned condominium units into a motel.

A municipality's zoning authority is clearly founded in its police power. *Bob Jones University v. City of Greenville*, 243 S. C. 351, 133 S. E. (2d) 843 (1963). But, the general rule that the doctrine of estoppel is not to be applied to deny a governmental agency the due exercise of its police power, *South Carolina Department of Social Services v. Parker*, 275 S. C. 176, 268 S. E. (2d) 282 (1980), does not control this case. "Estoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as equities between the parties may preponderate." *Pitts v. New York Life Insurance Co.*, 247 S. C. 545, 148 S. E. (2d) 369, 371-72 (1966). Government agents, acting within the proper scope of their authority, can by their acts give rise to estoppel against a municipality. *Abbeville Arms v. City of Abbeville*, 273 S. C. 491, 257 S. E. (2d) 716, 718 (1979). To allow the City to repudiate its former interpretation of permissible rentals and the statements of its zoning director, based upon a re-assessment of the meaning of an undefined term in the ordinance would be unconscionable. *See Kerr v. City of Columbia*, 232 S. C. 405, 102 S. E. (2d) 364 (1958).

The equities of this case rest with respondents. Accordingly, the judgment below is affirmed.

Affirmed.

NESS, GREGORY, HARWELL and CHANDLER, JJ., concur.