629 S.E.2d 372

SLOAN CONSTRUCTION COMPANY, INC., Appellant,

v.

SOUTHCO GRASSING, INC., Wanda Surrett, South Carolina Department of Transportation, and Greer State Bank, Defendants,

of whom South Carolina Department of Transportation is Respondent.

No. 4085.

Court of Appeals of South Carolina.

Heard Jan. 10, 2006.

Decided Feb. 21, 2006.

Withdrawn, Substituted, and Refiled April 24, 2006.

Rehearing Denied April 24, 2006.

T.S. Stern, Jr., of Greenville, for Appellant.

Beacham O. Brooker, Jr., of Columbia, for Respondent.

WILLIAMS, J.:

Sloan Construction Company, Inc., ("Sloan") appeals the dismissal of its action against the South Carolina Department of Transportation ("SCDOT"), arguing South Carolina Code Sections 29–6–250 and 57–5–1660(a)(2) (Supp.2004) give rise to a private right of action against a violating state agency. We affirm.

## FACTS

The facts of this case are largely uncontested. SCDOT hired Southco Grassing, Inc., ("Southco") as the general contractor on state highway project no. 23.504 ("the Project"). Pursuant to South Carolina Code Sections 29–6–250 and 57–5–1660(a)(2) (Supp.2004), Southco provided SCDOT with proof it acquired a payment bond valued at 100% of the $440,016.90 contract amount. Amwest Surety Insurance Company ("Amwest Surety"), a company qualified and licensed for surety authority by the South Carolina Department of Insurance with an A-rating from the A.M. Best Company, issued the bond.

In November 2000, Sloan entered into a subcontractor agreement with Southco in connection with the Project. Over

the course of Sloan's contract performance, Amwest Surety was judged insolvent by the insurance commissioner of Nebraska, the company's home state. In June 2001, the Nebraska courts ordered Amwest Surety to liquidate all its assets. Upon notice of Amwest Surety's insolvency, SCDOT wrote to Southco requesting proof of a replacement payment bond within seven days. Southco did not respond to this request. Sloan properly performed its portion of the Project, but was not paid the $51,937.66 owed for the completed job. Sloan did not file a claim against Amwest Surety through the company's appointed receiver.

In January 2002, Sloan submitted written notice to SCDOT of its unpaid claim, recounting its hardships with the insolvent Amwest Surety. Several months later, Southco submitted an affidavit to SCDOT averring all subcontractors on the Project were paid in full. In accordance with the agency's contract closeout procedures, which require an affidavit sworn by a principal of the general contractor stating all subcontractor claims are paid in full, SCDOT released the balance of the contract price to Southco.

In December 2003, Sloan commenced the present action against Southco, SCDOT, and others for the unpaid contract price. Sloan based its claim against SCDOT on South Carolina Code Sections 29–6–250 and 57–5–1660(a)(2) (Supp.2004), asserting these statutes create an enforceable duty on the part of SCDOT to assure the payment bonds on its projects are, in fact, obtained and remain in effect until full payment. SCDOT responded by filing a 12(b)(6), SCRCP, motion to dismiss. The circuit court granted SCDOT's motion, concluding the statutes in question do not give rise to a private action against a violating state agency. This appeal followed.

## SCOPE OF REVIEW

"Under Rule 12(b)(6), SCRCP, a defendant may move to dismiss based on a failure to state facts sufficient to constitute a cause of action." *Flateau v. Harrelson,* 355 S.C. 197, 201, 584 S.E.2d 413, 415 (Ct.App.2003) (citing *Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999)). The circuit court, in a civil action, may dismiss a claim when the defendant demonstrates the plaintiff has failed to state facts sufficient to

constitute a cause of action in the pleadings filed with the court. *Id.* The motion cannot be granted if the facts set forth in the complaint and the inferences reasonably drawn therefrom would entitle the plaintiff to any relief on any theory of the case. *Brown v. Leverette,* 291 S.C. 364, 366, 353 S.E.2d 697, 698 (1987).

## DISCUSSION

The circuit court concluded South Carolina Code Sections 29–6–250 and 57–5–1660(a)(2) (Supp.2004) do not grant Sloan a private right of action against SCDOT. We agree.

Section 57–5–1660 of the South Carolina Code reads in pertinent part:

(a) The Department of Transportation shall require that the contractor on every public highway construction contract, exceeding ten thousand dollars, furnish the Department of Transportation, county, or road district the following bonds, which shall become binding upon the award of the contract to such contractor:

(2) A payment bond with a surety or sureties satisfactory to the awarding authority, and in the amount of not less than fifty per cent of the contract, for the protection of all persons supplying labor and materials in the prosecution of work provided for in the contract for the use of each such person.

S.C.Code Ann. § 57–5–1660 (Supp.2004). This statute, enacted to protect subcontractors and materialmen on SCDOT projects, is often referred to as the "Little Miller Act," as it was modeled after the federal Miller Act, 40 U.S.C.A. §§ 270a & 270b (1986) (following 2002 amendment, these federal statutes are cited as 40 U.S.C.A. §§ 3131–3133). *Syro Steel Co. v. Eagle Constr. Co.,* 319 S.C. 180, 182, 460 S.E.2d 371, 373 (1995). In addition, Section 29–6–250, enacted in 2000, requires payment bonds for the protection of subcontractors on certain government projects for the full amount of the contract.

Section 29–6–250 reads in pertinent part as follows:

(1) When a government body is a party to a contract to improve real property, and the contract is for a sum in excess of fifty thousand dollars, the owner of the property

shall require the contractor to provide a labor and material payment bond in the full amount of the contract.

. . . .

(3) For the purposes of any contract covered by the provisions of this section, it is the duty of the entity contracting for the improvement to take reasonable steps to assure that the appropriate payment bond is issued and is in proper form.

S.C.Code Ann. § 29–6–250 (Supp.2004).

■ Our analysis of whether these statutes grant an individual or corporation the right to sue a violating state agency begins with the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–10 to –200 (2005). "The Tort Claims Act governs all tort claims against governmental entities." *Hawkins v. City of Greenville*, 358 S.C. 280, 292, 594 S.E.2d 557, 563 (Ct.App.2004). The Act, a limited waiver of the State's sovereign immunity from lawsuits, provides that State agencies are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions provided in the Act. S.C.Code Ann. § 15–78–40 (2005).

When the Act is applied to the present facts, it is clear Sloan has no right to sue under the South Carolina Tort Claims Act's limited waiver of sovereign immunity. Because the "Little Miller Act," and section 29–6–250 deal solely with government contracts, a private individual would never be in a position to require these statutorily mandated bonds, and thus could never be liable for the failure to require them. *See, e.g., Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir.1984); *Hardaway Co. v. United States Army Corps of Eng'rs*, 980 F.2d 1415, 1416–1417 & n. 3 (11th Cir.1993) (adopting this rationale regarding the federal Miller Act and Federal Tort Claims Act and acknowledging the application of similar analyses by the Fourth, Ninth, and Tenth Circuits). Because a private individual could never be liable under the bonding statutes, the South Carolina Tort Claims Act's limited waiver of sovereign immunity does not apply to suits brought against the government under the statutes in question.

■ We move now to the issue of whether South Carolina's statutory bonding scheme, in itself, constitutes a waiver of

SCDOT's sovereign immunity from suit. Because the "Little Miller Act" is patterned after the federal Miller Act, cases construing the federal Miller Act, absent a contrary expression of legislative intent, will be given great weight in the interpretation of its South Carolina counterpart. *Syro Steel Co.*, 319 S.C. at 182, 460 S.E.2d at 373. Federal cases construing the federal Miller Act are nearly unanimous in their interpretation. Under federal law, failure of a government agency to follow the bonding requirements of the Miller Act, without other authority evincing a waiver of sovereign immunity, does not give rise to a private right of action against the agency. *See, e.g., Active Fire Sprinkler Corp. v. United States Postal Service*, 811 F.2d 747, 752–753 (2nd Cir.1987) ("The Miller Act does not provide subcontractors with a right of recovery against the United States."); *Arvanis*, 739 F.2d at 1290 ("[In the Miller Act] [t]here is clearly no waiver of sovereign immunity."); *Devlin Lumber & Supply Corp. v. United States*, 488 F.2d 88, 89 (4th Cir.1973) ("[A] violation of the Miller Act does not create liability on the part of the government. . . ."); *Acousti Eng'g Co. of Florida v. United States*, 15 Cl.Ct. 698, 701 (Cl.Ct.1988) ("The Miller Act does not give subcontractors a substantive right to directly sue the United States for monies owed by [a] prime contractor.").

As there is no clear expression of legislative intent in South Carolina contrary to the interpretation of the federal Miller Act applied by the federal courts, we likewise conclude the statutes do not constitute a waiver of sovereign immunity and that a violation of our own statutory bonding scheme does not give rise to a private right of action against a state agency.[1] In doing so, we share the concern of the circuit court judge that "such a result is at odds with the overall goal of Miller Act type legislation—i.e., the protection of subcontractors who have no right to lien on government work." Nevertheless, as stated by Seventh Circuit Court of Appeals:

---

1. Because we decide this case on the grounds that South Carolina's bonding scheme on state projects does not grant a subcontractor the right to bring a private action against a violating state agency, we need not address whether SCDOT complied with the statutes in question under the present facts.

"[t]here does seem to be a gap in the statute; there is no provision for the contingency that both the contractor and the government contracting officer will ignore the bonding requirement. However, this is not a gap that we can fill with a remedy. . . ."

*Arvanis*, 739 F.2d at 1290. Should the General Assembly desire South Carolina's bonding scheme on state projects to allow private suits against the government, the statutes could easily call for such. *See, e.g., Kelly Energy Systems, Inc. v. Brd. of Commissioners of Clarke County*, 196 Ga.App. 519, 396 S.E.2d 498, 499–500 (1990) ("[the Georgia bonding statute] provides that the governing body for which the work is done shall be liable to all materialmen for any loss resulting from the failure to require a payment bond.").

For the foregoing reasons, the circuit court's grant of SCDOT's motion to dismiss is

**AFFIRMED.**

STILWELL and KITTREDGE, JJ., concur.