659 S.E.2d 158

SLOAN CONSTRUCTION COMPANY, INC., Petitioner,

v.

SOUTHCO GRASSING, INC., Wanda Surrett, South
Carolina Department of Transportation, and
Greer State Bank, Defendants,

of whom South Carolina Department of
Transportation is, Respondent.

No. 26462.

Supreme Court of South Carolina.

Heard Nov. 1, 2007.

Decided March 24, 2008.

110

T.S. Stern, Jr., of Covington Patrick Hagins Stern & Lewis, of Greenville, for Petitioner.

Beacham O. Brooker, Jr., of South Carolina Department of Transportation, of Columbia, for Respondent.

Charles H. McDonald and Daniel T. Brailsford, both of Robinson, McFadden & Moore, of Columbia, for Amicus Curiae American Subcontractors Association of the Carolinas.

L. Franklin Elmore, of Elmore & Wall, of Greenville, for Amicus Curiae Carolinas Associated General Contractors.

Chief Justice TOAL:

A subcontractor working on a state highway maintenance project brought negligence and breach of contract claims against the South Carolina Department of Transportation (SCDOT) for allegedly failing to comply with statutory bond requirements for contractors working on public projects. The trial court dismissed the subcontractor's claims finding that the bond statutes did not give rise to a private right of action against SCDOT and the court of appeals affirmed. This Court

granted certiorari to decide whether a subcontractor may bring a private right of action against a government entity for failure to comply with statutory bond requirements. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

SCDOT hired Defendant Southco Grassing, Inc. ("Southco") as the general contractor on a state highway maintenance project and in accordance with the relevant statutory bond requirements, Southco provided SCDOT with proof of a payment bond for the benefit of its subcontractors and suppliers covering the entire value of the approximately $440,000 contract. Southco subsequently contracted with Petitioner Sloan Construction Company ("Sloan") to perform asphalt paving in connection with the project.

In June 2001, prior to the completion of the paving work, Southco's payment bond was cancelled due to the insolvency of the bond's issuer, Amwest Surety Insurance Company ("Amwest"). Upon notice of Amwest's insolvency, SCDOT wrote Southco requesting proof of a replacement bond within seven days. Southco never responded. In the meantime, Sloan completed its portion of the paving subcontract valued at nearly $52,000.

Sloan notified SCDOT in January 2002 that it still had not received payment from Southco for the work completed and additionally informed SCDOT that Southco had not secured another payment bond following the cancellation of the Amwest bond. In March 2003, without having made full payment to Sloan, Southco notified SCDOT that it had made all payments on the project and SCDOT disbursed final retainage to Southco.

Sloan brought an action for negligence against SCDOT pursuant to the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10 *et. seq.* (2005 & Supp.2006), alleging that SCDOT was negligent in failing to ensure that Southco was properly bonded in accordance with the bond requirements in S.C.Code Ann. § 29–6–250 (Supp.2006) and S.C.Code Ann. § 57–5–1660 (2006). Sloan also brought a breach of contract claim alleging that SCDOT was obligated to Sloan as a third-party beneficiary to the contract between SCDOT and Southco

to ensure that Southco was properly bonded pursuant to these statutes.

In its answer, SCDOT moved to dismiss Sloan's complaint under Rule 12(b)(6), SCRCP, arguing that the bond statutes did not create a duty giving rise to liability for negligence on the part of SCDOT, and that SCDOT owed no contractual duty to Sloan due to lack of privity. The trial court granted SCDOT's motion to dismiss finding that the South Carolina Tort Claims Act prohibited Sloan from bringing a negligence claim against a government entity for failing to enforce a statute, and noting that under the analogous federal government bonding scheme contained in the Miller Act, 40 U.S.C. §§ 3131–3134 (2005), similar claims were not permitted on the grounds that the Federal Tort Claims Act—like the South Carolina Tort Claims Act—prohibited claims for violation of a federal statute in the absence of a similar state law cause of action recognizing private liability. Additionally, the trial court found that lack of privity prohibited Sloan's contract claim.

Sloan appealed and the court of appeals affirmed the trial court's decision, holding that Sloan's claims were prohibited under the South Carolina Tort Claims Act and that no other right of action otherwise existed under the bond statutes. The court of appeals never specifically addressed Sloan's contract claim. *Sloan Constr. Co., Inc. v. Southco Grassing, Inc.*, 368 S.C. 523, 629 S.E.2d 372 (Ct.App.2006).

This Court granted Sloan's petition for writ of certiorari and Sloan raises the following issue for review:

> Did the court of appeals err in holding that statutory bond requirements applicable to public projects do not create an enforceable duty giving rise to a private right of action by a subcontractor against a government entity?

## STANDARD OF REVIEW

In reviewing the dismissal of a claim for failure to state facts sufficient to constitute a cause of action under Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). The question for the court is whether in the light most favorable to the plaintiff, and with

every doubt resolved in his behalf, the allegations set forth on the face of the complaint state any valid claim for relief. *Plyler v. Burns,* 373 S.C. 637, 645, 647 S.E.2d 188, 192 (2007). If the "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case," then dismissal under Rule 12(b)(6) is improper. *Stiles v. Onorato,* 318 S.C. 297, 300, 457 S.E.2d 601, 603 (1995).

## Law/Analysis

Sloan argues that the court of appeals erred in failing to find that the statutory bond requirements give rise to a cause of action by a subcontractor against the government for failure to ensure that general contractors on government construction projects are properly bonded. We agree.

### A. Right of action arising under the bond statute

Prior to the year 2000, South Carolina law afforded limited protection to subcontractors and suppliers providing labor and materials on public projects. *See* S.C.Code Ann. § 11–30–3030 (Supp.2006) (outlining a bonding scheme applicable to projects under the direction of governmental bodies generally) *and* S.C.Code Ann. § 57–5–1660 (outlining a bonding scheme specific to highway projects under the direction of SCDOT). Known as "Little Miller Acts," these provisions are the state counterpart to the federal Miller Act legislation enacted to address the problem of subcontractors who may not use liens on public property to secure payment for work performed on public projects and must otherwise rely on the financial solvency of prime contractors. *See United States v. Munsey Trust Co. of Washington, D.C.,* 332 U.S. 234, 241, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). *See also Atl. Coast Lumber Corp. v. Morrison,* 152 S.C. 305, 309, 149 S.E. 243, 245 (1929) (acknowledging that a mechanics' lien may not be enforced on public property). Consistent with the federal Miller Act, the bonding schemes contained in the Little Miller Acts require both a performance bond to ensure the timely performance of the contract by the general contractor and a payment bond to cover payment of subcontractors and suppliers in the event of the general contractor's default. *See* S.C.Code Ann. § 11–35–3030 *and* S.C.Code Ann. § 57–5–1660.

In 2000, the South Carolina legislature enacted the Subcontractors' and Suppliers' Payment Protection Act (SPPA), S.C.Code Ann. §§ 29-6-210 *et. seq.* (Supp.2006). The SPPA is specifically applicable to subcontractors and suppliers on government projects and outlines a detailed bonding scheme that significantly expands the protections already afforded these parties under the Little Miller Acts. The SPPA reads in pertinent part as follows:

(1) When a governmental body is a party to a contract to improve real property, and the contract is for a sum in excess of fifty thousand dollars, the owner of the property shall require the contractor to provide a labor and material payment bond in the full amount of the contract. . . .

. . . .

(3) For purposes of any contract covered by the provisions of this section, it is the duty of the entity contracting for the improvement to take reasonable steps to assure that the appropriate payment bond is issued and is in proper form.

S.C.Code Ann. § 29-6-250. The SPPA does not expressly provide for a right of action between the subcontractor and the contracting government body.

The court of appeals relied heavily on federal court interpretations of the Miller Act in holding that statutory bonding requirements under the SPPA do not establish a duty for which the government may be liable to a subcontractor. *See Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir.1984) (holding that the failure of a government agency to comply with the Miller Act's bonding requirements does not give rise to a private right of action against the agency) *and Syro Steel Co. v. Eagle Constr. Co., Inc.*, 319 S.C. 180, 182, 460 S.E.2d 371, 373 (1995) (holding that absent a contrary expression of legislative intent, cases construing the federal Miller Act will be given great weight in interpreting the South Carolina counterpart). We find that the court of appeals improperly analyzed the SPPA bond statute under Miller Act rubric in arriving at its conclusion. The SPPA has neither ever been characterized as a Little Miller Act nor does it otherwise appear to be patterned after the Miller Act, which seeks to protect both the owner/government entity and the subcontractor through its bonding requirements. Instead, we

look to our jurisprudence which holds that when a statute defining a government duty does not specifically create a private cause of action for breach of that duty, a cause of action may be implied if the legislation was enacted for the special benefit of a private party rather than the public at large. *Adkins v. S.C. Dept. of Corr.,* 360 S.C. 413, 418, 602 S.E.2d 51, 54 (2004). Accordingly, we find that the relevant determination is whether an implied right of action exists under the SPPA.

Beginning with an analysis of the statutory framework, we first find that the very title of the SPPA clearly indicates the General Assembly intended to provide stronger payment protection specifically for subcontractors and suppliers on government projects. *See Broadhurst v. City of Myrtle Beach Elec. Comm'n,* 342 S.C. 373, 381, 537 S.E.2d 543, 546 (2000) (using title of statute to support a judicial interpretation). We also find the placement of the SPPA within the South Carolina Code significant. Instead of appearing in the Procurement Code,[1] the SPPA is framed solely in the context of payment security by virtue of its location in Chapter 6 of Title 26, entitled "Payments to Contractors, Subcontractors, and Suppliers." This Court has long held that such remedial statutes should be liberally construed in order to effectuate their purpose. *S.C. Dept. of Mental Health v. Hanna,* 270 S.C. 210, 213, 241 S.E.2d 563, 564 (1978).

The statutory terms which tend to distinguish the SPPA from the Little Miller Acts likewise demonstrate the SPPA's enactment for the particular benefit of subcontractors and suppliers. First, the SPPA addresses only the requirement of a payment bond to protect subcontractors in the event of a contractor's nonpayment. The statute does not mention a corresponding performance bond—required in the Little Miller Acts—to protect the owner/government entity in the event of a contractor's nonperformance. Furthermore, the SPPA takes the Little Miller Acts' bond requirement one step further by establishing both a duty on the part of the governmental body to require payment bonding, as well as a standard of care for overseeing the issuance of a proper payment bond. *See* S.C.Code Ann. § 29–6–250 (providing that "it is the duty

---

1. *See* S.C.Code Ann. § 11–35–10 *et. seq.* (1986 & Supp.2006).

of the entity contracting for the improvement to take reasonable steps to assure that the appropriate payment bond is issued and is in proper form"). In placing an affirmative duty on the government that is absent from the Little Miller Acts, we find that the legislature must have intended for those to whom the government owed the duty to be able to vindicate their rights under a statute enacted for their special benefit. *See State ex. rel. McLeod. v. Montgomery*, 244 S.C. 308, 314, 136 S.E.2d 778, 782 (1964) (finding that a court must presume that the legislature "intended by its action to accomplish something and not to do a futile thing"); *see also Steinke v. S.C. Dep't. of Labor, Licensing and Regulation*, 336 S.C. 373, 388, 520 S.E.2d 142, 149 (1999) (acknowledging that an affirmative legal duty may be created by statute (quoting *Jensen v. Anderson County Dept. of Soc. Servs.*, 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991))). For these reasons, we hold that an implied private right of action by a subcontractor against the government exists under the SPPA.[2]

We briefly address SCDOT's suggestion that a suit on the bond in the event of nonpayment—a remedy expressly permitted under the statute[3]—adequately serves any legislative purpose to protect subcontractors. In our view, this argument fails. A right to sue on the bond provides absolutely no protection for the subcontractor where, as alleged here, the government agency has altogether failed to secure or maintain proper bonding; clearly, a subcontractor cannot sue on a bond that does not exist in the first instance. Moreover, a suit on the bond, standing alone, gives the government entity no incentive to comply with the statute's bonding requirement when the entity 1) has no financial stake in the event of a contractor's nonpayment, and 2) no legal stake in its own

---

2. As described in the factual background of this case, Sloan purported to bring an action in negligence under both the SPPA and the Little Miller Act applicable to state highway projects. *See* S.C.Code Ann. § 57-5-1660. We see no reason to reject the court of appeals' reliance on federal Miller Act interpretations in finding that no implied right of action exists under the Little Miller Act bond statute. Moreover, any existence of such an action under the Little Miller Act bond statute would be duplicative given our holding today.

3. *See* S.C.Code Ann. § 11-1-120 (Supp.2006) (incorporating into the SPPA by reference a provision which allows a suit on the bond by the subcontractor against the contractor in the event of nonpayment).

noncompliance. In our opinion, the legislative purpose of the SPPA is only served by permitting subcontractors and suppliers on government projects—the only parties with a financial interest in enforcing the bond requirements of the SPPA—to bring a claim under the statute.

■ Finally, although neither party raised the issue, the dissent asserts that the SPPA does not apply in the instant case, and that the bonding provisions relevant to SCDOT highway construction projects are found exclusively in S.C.Code Ann. § 57–5–1660 (2006). In doing so, the dissent draws a dubious distinction between "highways" and "roadways" that cannot be sustained in light of the principle that statutory language must be given its plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statutes operation. *Cohen's Drywall Co. Inc. v. Sea Spray Homes,* 374 S.C. 195, 200, 648 S.E.2d 598, 600 (2007). Although, as the dissent points out, there are apparent discrepancies between § 57–5–1660 and the SPPA,[4] a basic presumption exists that the legislature has knowledge of previous legislation when later statutes are passed on a related subject. *Berkebile v. Outen,* 311 S.C. 50, 53, 426 S.E.2d 760, 762 (1993). Accordingly, and without an indication of legislative intent to the contrary, we find that any directive on the application of one statute to the exclusion of the other is within the province of the legislature. *State v. Blackmon,* 304 S.C. 270, 275, 403 S.E.2d 660, 662 (1991) (holding that the legislature, and not the court, is responsible for amending laws to resolve inconsistencies).

■■ In our view, the enactment of the SPPA in 2000 illustrates the legislature's intent to, in essence, pick up where the Little Miller Acts left off by outlining a more extensive

---

4. The primary substantive differences in the statutory bonding requirements is that under § 57–5–1660, the contractor's performance and payment bonds are required on contracts exceeding $10,000 and must be with a surety "satisfactory to the awarding authority," which under SCDOT regulations, is a surety with a minimum rating of "B". Additionally, § 57–5–1660 requires the payment bond to have a face value of at least 50% of the contract. The SPPA, on the other hand, requires a bond on contracts exceeding $50,000 and provides that the bond must be issued by a surety with a minimum rating of "A". The payment bond under the SPPA is only required to have a face value of 10% of the contract.

payment protection scheme dedicated specifically to subcontractors and suppliers. Accordingly, we hold that the duty created under the SPPA gives rise to a private right of action against a government entity for failure to ensure that a contractor is properly bonded.[5]

## B. Third-party beneficiary breach of contract claim

■ Sloan contends that failure to comply with statutory bonding requirements gives rise to a third-party beneficiary breach of contract claim by the subcontractor against the government.[6] Sloan therefore argues that the trial court erred in dismissing its breach of contract claim against SCDOT based on lack of privity. We agree, finding Judge Richard Posner's reasoning in *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952 (7th Cir.2002) instructive on this matter.

In *A.E.I. Music,* a federal district court was asked to determine the nature of an unpaid subcontractor's breach of contract claim against the city school board for failing to require a contractor on a school construction project to post a payment bond as required by the Illinois Bond Act. The Bond Act provided in relevant part that in contracts for public work, "[the contracting state agency] shall require every contractor for the work to furnish, supply and deliver" a payment bond to

---

5.  Sloan additionally argues that the court of appeals erred in finding that the South Carolina Tort Claims Act bars a claim against a government agency for failure to enforce statutory bonding requirements. Although we find that the court of appeals incorrectly based its conclusion with respect to the SPPA on this issue on federal Miller Act jurisprudence, we nevertheless agree that a claim for failure to enforce the bonding requirements of the SPPA is not properly brought pursuant to the Tort Claims Act because the Act does not act as a waiver of sovereign immunity when a governmental entity fails to enforce a statute. *See* S.C.Code Ann. § 15–78–60(4) (2005). *See also Hawkins v. City of Greenville,* 358 S.C. 280, 292–93, 594 S.E.2d 557, 563–64 (Ct.App.2004) (noting that the South Carolina Tort Claims Act is only a limited waiver of sovereign immunity for tort claims against government entities and does not create new substantive causes of action). Therefore, the Tort Claims Act is not relevant to the government's liability for failure to comply with a duty under the SPPA.

6.  A sovereign is not immune from a suit based on its breach of a contractual obligation. *Hodges v. Rainey,* 341 S.C. 79, 92, 533 S.E.2d 578, 585 (2000).

the State in favor of subcontractors. 30 Ill. Comp. Stat. Ann. 550/1. The court determined that because no bond had been in place to begin with, the subcontractor's suit against the school board was not a suit on the bond under the Bond Act. *A.E.I. Music*, 290 F.3d at 954. Rather, the court characterized the action as a third-party beneficiary suit for breach of contract because the Act's bond requirement was read into every construction contract of a public entity, and therefore, became a term of the contract between the school board and the general contractor. *Id.* at 955. Because the term was intended to benefit the general contractor's subcontractors, the subcontractor was a direct third-party beneficiary—as opposed to an incidental beneficiary—and therefore entitled to enforce the bond requirement. *Id.*

The *A.E.I. Music* court's discussion contained numerous policy-based theories for characterizing a subcontractor as a direct third-party beneficiary with the right to sue on the primary contract. Judge Posner explained that the statutory bond requirement was a contractual term incorporated by the legislature, and therefore, the "relevant intentions" in determining whether a third party could enforce the contract pursuant to the third-party beneficiary doctrine were "no longer those of the parties but those of the legislature." *Id.* at 955–56. In creating a bond requirement, Judge Posner determined that the legislature intended public works construction contracts to protect subcontractors. Because subcontractors would be the only ones with an interest in enforcing this contractual term, carrying out the legislature's intent required enabling this protected class to enforce the contract. *Id.* at 956. Accordingly, the court held the subcontractor's claim sounded in common law as a claim for breach of contract.[7] *Id.* at 957.

We find the *A.E.I. Music* court's analysis is equally applicable in this case. Recognizing that "the underlying goals of the Procurement Code serve important public interests concern-

---

7. Although the primary issue in *A.E.I. Music* was whether the subcontractor's claim was governed by the statute of limitations in the Illinois Bond Act or the common law statute of limitations for contract actions, we find Judge Posner's reasoning as to the subcontractor's rights and characterization as a third-party beneficiary is nonetheless instructive in this case.

ing this particular contractual relationship," this Court has held that contracts formed pursuant to the Procurement Code are deemed to incorporate the applicable statutory provisions and such provisions shall prevail over conflicting contractual provisions. *Unisys Corp. v. S.C. Budget & Control Bd.*, 346 S.C. 158, 171, 551 S.E.2d 263, 271 (2001). Although not located in the Procurement Code, the SPPA is generally applicable to public procurement. Therefore, we find that an incorporation of the SPPA's bonding requirements into public works contracts is consistent with this Court's reasoning in *Unisys Corp.*

Even without reference to the Procurement Code, the SPPA serves important public interests in its own right. Seeking to protect subcontractors' payment rights on government projects encourages competitive bidding, which results in the most economically efficient use of tax dollars and other sources of public funding. Accordingly, we hold that the bonding requirements of the SPPA are incorporated into construction contracts governed by the statute.

Finally, we find that under established contract law in South Carolina, subcontractors have enforceable rights as third-party beneficiaries to construction contracts incorporating the SPPA. *See Bob Hammond Constr. Co., Inc. v. Banks Constr. Co.*, 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct.App.1994) (noting that where a contract between two parties is intended to create a direct benefit to a third party, the third party may enforce the contract). Because the legislature intended to protect contractors by creating bonding requirements, and because the subcontractors are the only ones with a financial stake in enforcing the bond requirements, subcontractors are direct third-party beneficiaries to the contract between a government entity and a general contractor to which the SPPA is applicable. For this reason, the government may be liable to a subcontractor for breach of contract for failing to comply with the SPPA bonding requirements.

■ Accordingly, we hold that a government agency's failure to secure and maintain statutory bonding as required by the SPPA gives rise to a third-party beneficiary breach of contract action by a subcontractor.

## C. Extent of governmental liability

■ We clarify our holding today by emphasizing that the government's liability for failure to ensure compliance with statutory bond requirements is not open-ended. The purpose of the SPPA is similar to that underlying the subcontractor's lien outlined in the mechanics' lien statute, *see* S.C.Code Ann. § 29–5–20 (1991), which is to protect a party who provides labor or materials for the improvement of property but does not have a contractual relationship with the property owner. *Stoudenmire Heating & Air Conditioning Co., Inc. v. Craig Bldg. P'ship*, 308 S.C. 298, 302, 417 S.E.2d 634, 637 (Ct.App. 1992). The subcontractor's lien, however, is not intended to create a windfall to the subcontractor. The mechanics' lien statute provides that when a subcontractor seeks to enforce a mechanics' lien against the owner of the improved property due to the general contractor's nonpayment, the owner's liability is limited to the remaining unpaid balance on the contract with the general contractor at the time the owner receives notice from the subcontractor of the general contractor's nonpayment. S.C.Code Ann. § 29–5–40 (1991); *Lowndes Hill Realty Co. v. Greenville Concrete Co.*, 229 S.C. 619, 630, 93 S.E.2d 855, 860 (1956). Given the similar purposes behind the SPPA bond requirements for public projects and the subcontractors' mechanics' lien on private work, we hold that in a tort or contract action arising under the SPPA, the government entity's liability is limited to the remaining unpaid balance on the contract with the general contractor when the subcontractor notifies the government of the general contractor's nonpayment. This limitation, however, does not preclude the additional recovery of attorneys' fees under any applicable statute.

### CONCLUSION

For the foregoing reasons, we reverse the court of appeals' decision affirming the dismissal of Sloan's claims against SCDOT. Considering only the allegations set forth on the face of the plaintiff's complaint for purposes of our review today, we find that a resolution of Sloan's claim by this Court on the merits is factually premature. Accordingly, we remand the case to the trial court for a determination of SCDOT's liability to Sloan consistent with this opinion.

WALLER, J., and Acting Justice ALEXANDER S. MacAULAY, concur.

PLEICONES, J., dissenting in a separate opinion in which Acting Justice E.C. BURNETT, III, concurs.

Justice PLEICONES:

I respectfully dissent. The trial court held, and I agree, that the SPPA does not apply to this contract for highway improvements, the relevant bonding provisions being those found in S.C.Code Ann. § 57–5–1660 (2006). I would accordingly vacate that part of the Court of Appeals opinion which addresses the merits of the SPPA claim, and affirm.

South Carolina Code Ann. § 57–5–1660 is found in a chapter of the Code entitled "State Highway System:" more specifically, this statute is found in the article of that chapter entitled "Construction Contracts and Purchases." Section 57–5–1660 governs "Contractors' bonds; amounts and actions thereon" and provides in relevant part:

(a) The Department of Transportation shall require that the contractor on every public highway construction contract, exceeding ten thousand dollars, furnish the Department of Transportation, county, or road district the following bonds, which shall become binding upon the award of the contract to such contractor:

(1) A performance and indemnity bond. . . .

(2) A payment bond with a surety or sureties satisfactory to the awarding authority, and in the amount of not less than fifty percent of the contract, for the protection of all persons supplying labor and materials in the prosecution of work provided for in the contract for the use of each such person.

The statute requires a bond before the contract was let, a condition which was admittedly complied with, and contains no requirement that DOT keep a viable bond in place throughout the project. Even if this statute created a privately enforceable duty, DOT has not breached it.

The SPPA upon which the majority rests its decision, is simply inapplicable to a State Highway Department construction project. The "labor and material bond" statute cited by

the majority applies when a governmental body, including DOT, enters "a contract to improve real property." S.C.Code Ann. § 29–6–250(1)(2007). Such a contract is let by the property's owner to:

(2) "Improve" means to build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, or to excavate, clear, grade, fill, or landscape any real property, or to construct driveways and roadways, or to furnish materials, including trees and shrubbery, for any of these purposes, or to perform any labor upon these improvements, and also means and includes any design or other professional or skilled services furnished by architects, engineers, land surveyors, and landscape architects.

S.C.Code Ann. § 29–6–10(2)(2007).

In other words, when DOT has a parking lot repaved, or relandscapes an area adjoining its offices, or even when it contracts to build a new access road for a heavy equipment depot, it is subject to this act. A State Highway construction project, however, is neither a driveway nor a roadway within the ambit of the SPPA. Moreover, even if the SPPA were implicated by a such a project, § 29–6–250(1) merely requires the governmental entity entering the real estate improvement contract "take reasonable steps to assure that the appropriate bond is issued and is in proper form." Here, there is no contention that DOT breached its duty to see that the AM-WEST bond was issued, and that it was in proper form. As in § 57–5–1660, there is no obligation placed on the governmental entity to monitor the bond status after it has been issued. Accordingly, even assuming the SPPA applies, no breach of statutory duty has been alleged here.

Finally, I simply do not understand that part of the majority opinion which upholds Petitioner's right to maintain a third party breach of contract claim. Here, unlike the situation in *A.E.I.*, a proper bond was procured and accordingly there is no need to resort to the third party theory. In a breathtaking gesture, the majority incorporates the bond requirements of the SPPA into every public works contract "governed by the statute," apparently losing sight of the fact the statute only applies to contracts for the improvement of real estate, and then requires a bond only if the amount of the contract

exceeds $50,000.[8] Using a Procurement Code analogy and legislative powers, the majority goes on to "limit" governmental liability and suggests that attorney's fees may somehow be recoverable from an unnamed statutory source, inferentially the mechanic's lien statute. Showing greater restraint, the majority, while reversing the trial court's dismissal of the complaint, does refrain from ruling prematurely in Petitioner's favor.

I am awed by the majority's decision but I cannot join it. Highway Construction bonding contracts are governed solely by § 57–5–1660. The trial court was correct in dismissing this complaint, and the Court of Appeals, although using reasoning which I do not entirely concur in, properly affirmed. I would uphold the dismissal for the reasons given above.

Acting Justice E.C. BURNETT, III, concurs.

---

8. The effect of the majority's decision is to import the SPPA into highway construction contracting. It therefore appears that although § 57–5–1660 requires a bond whenever the highway construction contract exceeds $10,000, that monetary threshold is superseded by the SPPA, which requires a bond only when the contact exceeds $50,000. It is unclear to me how this ruling provides "a more extensive payment protection scheme dedicated specifically to subcontractors and suppliers."