665 S.E.2d 194

**QUAIL HILL, LLC, Appellant,**

v.

**COUNTY OF RICHLAND, South Carolina, Respondent.**

**No. 4407.**

Court of Appeals of South Carolina.

Heard April 9, 2008.

Decided June 6, 2008.

Rehearing Denied Aug. 25, 2008.

Clifford O. Koon, Jr., and Paul D. de Holczer, of Columbia, for Appellant.

William H. Davidson, II, and Michael Wren, of Columbia, for Respondent.

HEARN, C.J.

Quail Hill, LLC (Buyer) brought this action against Richland County as the result of its purchase of a 72.5 acre tract in reliance upon representations by County officers and staff regarding its zoning. The circuit court granted summary judgment to County on Buyer's claims for equitable estoppel, negligence, negligent misrepresentation, and inverse condemnation. We believe genuine issues of material fact exist as to some of Buyer's claims and therefore affirm in part, reverse in part, and remand.

## FACTS

In 2002, Buyer contacted a licensed real estate broker and authorized him to act as its agent in locating and purchasing a parcel suitable for development of a manufactured-home sub-

division. Broker identified a 72.5–acre parcel as a potential site for Buyer's development.

At this time, the Richland County Planning Department, Development Services' website advised the public: "Since 1997 the department has performed the planning, zoning and land use management staff functions of county government.... The Development Services Counter is the key point of public contact for the planning and zoning functions of the County. *It is the primary information resource of property owners and land use professionals who often need to know 'What can and can not be done with a piece of property.'* " (emphasis supplied).

Accordingly, in January 2003, Broker met with the Richland County Planning Department staff (Staff) to obtain the zoning classification and permitted uses for the parcel. County's subdivision coordinator, Carl Gosline, told Broker the parcel was zoned RU (rural), a classification that permits a manufactured-home subdivision. Additionally, County tax records listed the parcel's zoning as RU.

On March 13, 2003, Buyer purchased the parcel and then surveyed, platted, and prepared it for development. In September, Buyer filed an application with the County Planning Commission for site plan approval for his proposed subdivision. Buyer's site plan requested subdividing the parcel into twenty lots for manufactured homes. The Staff Report to the Planning Commission recommended approval of Buyer's subdivision plan and included the following findings: (1) the parcel was zoned RU, (2) the proposed project's impact on traffic was well within design capacity for the access road, (3) the proposed project was compatible with adjacent development, and (4) the project implemented objectives of the North Central Subarea Plan, including varied and low-density development initiatives. On October 6, 2003, the Planning Commission voted unanimously to approve Buyer's subdivision application and site plan. Thereafter, Buyer began marketing and selling lots for Brockington Acres.

Over a year later, after the first manufactured homes were already installed, community members contacted their county council representative and asked him to attend a neighborhood meeting at a church adjoining Brockington Acres. County's

current zoning administrator, Geonard Price, accompanied the council member to the meeting, where neighbors inquired about zoning restrictions and expressed opposition to the development of Brockington Acres. Shortly thereafter, on November 14, 2004, Staff notified Buyer that Price had interpreted the official zoning map and found the parcel was zoned RS–1, a classification that prohibits manufactured homes.[1] Three days later, Price issued an order requiring Buyer to cease development of the subdivision.

On November 17, 2004, County issued its order stopping further development; however, since receiving final site plan approval from the Planning Commission in October 2003, Buyer had already sold five of the subdivision's twenty lots. Two purchasers had obtained County permits authorizing them to install manufactured homes and, in fact, two homes were already installed on the lots. Another purchaser had permits to install manufactured homes on three lots, but had not yet installed them when the County issued its order to cease development.

When Buyer contacted Staff about County's order to cease development at Brockington Acres, Staff told him to apply to county council for a zoning map amendment and assured him it would recommend approval of his request. However, just two weeks later, the Staff Report recommended the Planning Commission *deny* Buyer's application for a zoning map amendment. At a meeting on December 2, 2004, the Planning Commission accepted the Staff Report and recommended county council deny Buyer's request for a zoning map amendment. Thereafter, county council voted unanimously to deny Buyer's application to amend the zoning map.

Buyer filed a complaint in circuit court requesting an injunction and alleging causes of action against County for equitable estoppel, negligence, negligent misrepresentation, and inverse condemnation. Buyer sought an order requiring County to change zoning of his parcel from RS–1 to RU. Alternatively, Buyer sought damages and attorney's fees. County moved for

---

1. The Record indicates Price was not the County's zoning administrator in 2003 when the Planning Commission approved Buyer's subdivision plan.

summary judgment, which the circuit court granted. This appeal followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment, this court applies the same standard that governed the trial court; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002); *see also* Rule 56(c), SCRCP. "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below." *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).

## LAW/ANALYSIS

### I. Validity of Zoning Ordinances

Initially Buyer contends there is a material issue of fact as to whether County validly enacted its 1978 zoning ordinances. We agree with the circuit court that Buyer is statutorily barred from challenging the validity of the zoning ordinance at this juncture.

It took County thirteen months to provide the minutes from the county council meetings in 1978 wherein the zoning on the subject property was purportedly granted. While Buyer asserts certain irregularities in connection with the approval of the zoning ordinances, the circuit court correctly held that Buyer may not now be heard to challenge the validity of the enactment of the ordinances. Section 6–29–760(D) of the South Carolina Code (2004) provides:

No challenge to the adequacy of notice or challenge to the validity of a regulation or map, or amendment to it, whether enacted before or after the effective date of this section, may be made sixty days after the decision of the governing body if there has been substantial compliance with the notice requirement of this section or with established proce-

dures of the governing authority or the planning commission.

Accordingly, we find Buyer's argument is without merit.

## II. Inverse Condemnation

■ Buyer next alleges the circuit court erred in granting summary judgment in favor of County on his claim for inverse condemnation. We disagree.

■ An inverse condemnation may result from the government's physical appropriation of private property, or it may result from government-imposed limitations on the use of private property. *Byrd v. City of Hartsville*, 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005). To prevail in an action for inverse condemnation, "a plaintiff must prove an affirmative, aggressive, and positive act by the government entity that caused the alleged damage to the plaintiff's property." *WRB Ltd. P'ship v. County of Lexington*, 369 S.C. 30, 32, 630 S.E.2d 479, 481 (2006).

The circuit court found there was "no evidence that the zoning designation [of Buyer's parcel] was changed, and at most, any representation of the zoning designation of the property by Mr. Gosline or contained in the Tax Assessor's records was a mistake." This finding is in line with Buyer's own complaint, which stated "the staff represented to [Buyer] that it had erroneously advised [Buyer] that the subject property was zoned 'RU' and that records in the development staff offices and Tax Assessor's office differed from the official zoning map."

On appeal, Buyer puts forth two alternative arguments in support of its assertion that the circuit court erred in granting County's motion for summary judgment on the inverse condemnation claim. First, Buyer contends there has never been a valid, enforceable zoning map and that therefore, it was denied the ability to develop the property as it desired without being subject to zoning restrictions. As discussed above, because Section 6–29–760(D) bars Buyer's challenge, this contention is without merit. Next, Buyer contends that County's action in informing it the zoning of the property was RU constituted a sufficient showing of an affirmative, aggressive, and positive act to establish inverse condemnation.

However, the only evidence in the record indicates that County's informing Buyer of the zoning designation for the property was merely a mistake, caused primarily by incorrect record keeping in the tax assessor's office. We have found no reported case, and Buyer has cited none, which holds that a mistake may rise to the level of an affirmative, aggressive, and positive act sufficient to constitute inverse condemnation. Accordingly, the court's grant of summary judgment to County on this cause of action is affirmed.

### III. Negligence and Negligent Misrepresentation

Buyer also contends the circuit court erred in granting summary judgment in favor of County on its claims of negligence and negligent misrepresentation. We agree.

The circuit court judge, relying on the South Carolina Tort Claims Act, held that Buyer's tort claims against County were barred by sovereign immunity. S.C.Code Ann. § 15–78–40 (2005) states: "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." Moreover, S.C.Code Ann. § 15–78–50(b) (2005) provides: "In no case is a governmental entity liable for a tort of an employee where that employee, if a private person, would not be liable under the laws of this State." Thus, the circuit court reasoned, County is liable for the negligent administration and enforcement of its zoning ordinances only if a private person could also be held liable for breach of that same duty under South Carolina law.

We recognize that there is Federal authority which supports the circuit court's resolution of this issue. See *United States v. Olson*, 546 U.S. 43, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005) (holding that under a similar provision of the Federal Tort Claims Act, the United States only waives sovereign immunity under circumstances where local law would make a private person liable in tort). Moreover, the circuit court also relied upon a recent decision from this court in granting summary judgment to County on these causes of action; however, the case relied upon was recently reversed by our supreme court.

*See Sloan Constr. Co., Inc. v. Southco Grassing, Inc.*, 368 S.C. 523, 629 S.E.2d 372 (Ct.App.2006), *rev'd* 377 S.C. 108, 659 S.E.2d 158 (2008) (holding that because a private person would never be liable for the failure to require bonds mandated under the "Little Miller Act," this court found Sloan had no right to sue under the South Carolina Tort Claims Act's limited waiver of sovereign immunity). Thus, no South Carolina precedent exists to support the circuit court's determination that it is necessary to have a private analogue in order for liability to exist against a governmental entity under the South Carolina Tort Claims Act. Therefore, at this premature stage of the litigation, we decline to hold that Buyer may not pursue its claims for negligence and negligent misrepresentation based on these provisions of the South Carolina Tort Claims Act.

■ The circuit court also based its decision to grant summary judgment on S.C.Code Ann. § 15–78–60(4) (2005), which states a governmental entity is not liable for a loss resulting from: "adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies. . . ." We view Buyer's claims for negligence and negligent misrepresentation as arising from County's actions in mistakenly advising Buyer on the applicable zoning restrictions on the 72.5 acre parcel, not as emanating from the adoption or enforcement of County's zoning ordinances; therefore, we disagree with the circuit court that this provision of the tort claims act bars Buyer's claims. Accordingly, we reverse the circuit court's grant of summary judgment on Buyer's causes of action for negligence and negligent misrepresentation.

## IV. Equitable Estoppel

■ Finally, Buyer contends the circuit court erred in granting summary judgment to County on its claim for equitable estoppel. Specifically, Buyer argues further inquiry is needed to determine whether County should be estopped from enforcing the RS–1 zoning determination almost two years after County determined the same parcel was zoned RU and a year after it approved Buyer's site plan. We agree.

 "[E]stoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as equities between the parties may preponderate." *Pitts v. N.Y. Life Ins. Co.*, 247 S.C. 545, 552, 148 S.E.2d 369, 372 (1966). To prevail on a claim of equitable estoppel, a party must show: "(1) a lack of knowledge[,] and the means of knowledge[,] of truth as to facts in question; (2) justifiable reliance upon the conduct of the party estopped; and (3) prejudicial change in the position of the party claiming estoppel." *Evins v. Richland County Historic Pres. Comm'n*, 341 S.C. 15, 20, 532 S.E.2d 876, 878 (2000).[2]

 "The acts of a government agent that are within the proper scope of his authority may give rise to estoppel against a municipality." *Charleston County v. Nat'l Adver. Co.*, 292 S.C. 416, 418, 357 S.E.2d 9, 10 (1987); *see also Landing Dev. Corp. v. City of Myrtle Beach*, 285 S.C. 216, 221, 329 S.E.2d 423, 426 (1985) ("To allow the city to repudiate its former interpretation of permissible rentals and the statements of its zoning director, based upon a re-assessment of the meaning of an undefined term in the ordinance[,] would be unconscionable.").

## 1. Lack of Knowledge

In granting summary judgment to County on Buyer's claim of equitable estoppel, the circuit court found the zoning administrator's interpretation of the official zoning map was conclusive because: "Richland County Zoning Ordinances provide that the official zoning map of Richland County constitutes the only official description of the location of zoning district boundaries, and that the zoning administrator is the only representative on behalf of Richland County that can interpret the official zoning map." However, this finding ignores the clear import of the County's website which directs the public to the Development Services Counter as "the primary infor-

---

2. We note there appears to be a divergence in our state's case law as to the number of elements required to prove equitable estoppel; however, for the purposes of this appeal, we analyze this claim under the three element rubric. *See e.g. McCrowey v. Zoning Bd. of Adjustment of City of Rock Hill*, 360 S.C. 301, 305, 599 S.E.2d 617, 619 (Ct.App.2004) (*quoting Oswald v. Aiken County*, 281 S.C. 298, 305, 315 S.E.2d 146, 151 (Ct.App.1984)).

mation resource of property owners and land use professionals who often need to know 'What can and can not be done with a piece of property.'" Moreover, the Frequently Asked Questions portion of the website advises the public to check the zoning of a parcel prior to its development by consulting with the Department of Development Services, and suggests that it is advisable "to meet with the Planning Staff to discuss your upcoming project." Nowhere on the website is it stated that the official zoning map must be consulted to determine a property's correct zoning designation.

Accordingly, we believe a genuine issue of material fact exists as to whether Buyer possessed the knowledge or the means to acquire the knowledge concerning the true zoning of this property. *See Abbeville Arms v. City of Abbeville*, 273 S.C. 491, 257 S.E.2d 716 (1979); *Landing Dev. Corp.*, 285 S.C. at 220, 329 S.E.2d at 425. At trial, both parties will have the opportunity to develop evidence on the issue of whether or not the official zoning map in Richland County is the exclusive means for acquiring zoning information.

## 2. Justifiable Reliance

Buyer contends there is a question of material fact whether its reliance on the representations of County officers and staff, acting within their proper scope of authority, was justified. We agree.

At the zoning hearing, Price was asked about Staff's determination that Buyer's parcel was zoned RU, and the Planning Commission's subsequent approval of Buyer's subdivision plan for manufactured housing which was predicated upon RU zoning. Price admitted: "It was thought to be approvable when we were asked." Price also conceded subdivision coordinator Gosline told him the parcel was zoned RU. Price then reviewed tax cards from the assessor's office showing the parcel's zoning as RU; however, Price could offer no reason for the contradictions of these statements and his later determination the development had a classification of RS–1.

Broker testified he met with subdivision coordinator Gosline about two months before Buyer purchased the parcel. Broker stated it was the common practice for brokers to consult Staff to determine a parcel's zoning classification. He also acknowl-

edged that, prior to November 17, 2004, he was unaware County kept an official zoning map and had never heard of developers demanding to see it. Additionally, Broker testified that Gosline determined the parcel was zoned RU by looking it up on his computer. Broker confirmed he later saw a tax bill that showed the property was zoned RU. Finally, Broker stated prior to November 17, 2004, all County documents referring to the parcel, including Buyer's recorded subdivision plat, showed the parcel was zoned RU.

Based on all of these assertions, Buyer purchased the parcel, then surveyed, platted and prepared it for development. We hold this evidence created a genuine issue of material fact as to whether Buyer's reliance on the representations of County officers and staff was justified.

### 3. Prejudicial Change in Position

Buyer contends there is a question of material fact whether harm was caused by his justifiable reliance on the County's representations. Specifically, he argues there was evidence that: (1) after County's Planning Staff determined the parcel was zoned RU, which permitted a manufactured home subdivision, Buyer purchased the parcel and prepared it for development; (2) after the Planning Commission unanimously approved the subdivision plan for Brockington Acres, Buyer recorded the plat, marketed the property, and sold lots for twelve months without objection; and (3) after County granted permits to purchasers for installation of their manufactured homes, it notified Buyer the parcel was zoned RS–1 and development must cease.[3]

Buyer contends that, as a result of his detrimental reliance, the value of his property was greatly diminished. Broker testified mobile homes predominate in the community encompassing Brockington Acres and lots for "stick-built homes" do not sell as quickly as lots for manufactured-homes. After County told Buyer he could not install manufactured-homes on his property, he sold six lots at a twenty-percent discount to the church members who had earlier opposed his development, losing a substantial amount of interest Buyer would

---

**3.** Purchasers who had received permits and had placed mobile homes on their lots were required to remove them.

have received from self-financing those six lots to the original purchasers. We believe these facts clearly demonstrate a question of Buyer's prejudicial change in position.

Under the standard of review for summary judgment, we find questions of material fact exist on each of the elements of Buyer's cause of action for equitable estoppel. Accordingly, the court's order granting County summary judgment on this cause of action is reversed.

## CONCLUSION

The circuit court's grant of summary judgment in favor of County on Buyer's claims of the existence of a valid zoning ordinance and inverse condemnation are affirmed. The grant of summary judgment in favor of County on Buyer's claims of negligence, negligent misrepresentation, and equitable estoppel are reversed.

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

CURETON, A.J., concurs. PIEPER, J., dissents in a separate opinion.

PIEPER, J., dissenting.

While I recognize the facts of the case are troubling, I respectfully dissent.

I do not believe that the Tort Claims Act provides a remedy for any negligence or mistake of a governmental employee not authorized by statute or ordinance to deviate from a zoning ordinance duly passed by the county. The negligence or mistake at issue did not involve the exercise of a discretionary act by even the duly authorized zoning administrator; instead, the negligent act or mistake at issue was the misinterpretation of the official zoning classification by an official other than the zoning administrator. Moreover, there simply is no indication that the zoning administrator or anyone else had the authority to deviate from the official zoning classification absent a duly authorized variance.

I am also concerned that the opinion may be interpreted as modifying the long-standing jurisprudence of this state re-

garding the application of estoppel against a governmental entity by recharacterizing a possible estoppel claim, if any, into one for negligence or negligent misrepresentation. United States Supreme Court Justice Oliver Wendell Holmes once noted that "men must turn square corners when they deal with the Government." *Rock Island, A. & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920). This case indeed presents such a situation and the majority opinion is very compelling as to the estoppel issue and the issue of summary judgment.

However, based upon my interpretation of the law on this issue, I would affirm the decision of the circuit court.